Points Decided.

---

(October 17, 1914.)

## FEDERAL MINING & SMELTING CO., Plaintiff, v. THE PUBLIC UTILITIES COMMISSION et al., Defendants.

[143 Pac. 1173.]

UTILITY ACT — UTILITIES COMMISSION — COMPULSORY PRODUCTION OF BOOKS AND PAPERS.

1. In a contest between a patron and a utility corporation in regard to the establishment of reasonable rates, the Utilities Commission has power to require the corporation to produce any and all records, contracts or papers bearing upon the questions in issue and that would throw any light upon the question of reasonable rates; and the commission has full power and authority to pass upon and determine the relevancy or competency of all evidence offered to prove or disprove the issues made by the pleadings, and this authority should be liberally exercised to enable parties to prepare properly for trial.

2. The business of the Washington Water Power Company, the defendant in the original proceeding, is the manufacture and sale of electricity to numerous customers, and the reasonable cost thereof can only be determined by showing the actual value of the plant, the actual cost to manufacture and deliver the electricity and all necessary disbursements for that purpose, including taxes, also the depreciation of the plant, plus a fair return on the money invested; and to determine the questions that must be determined, it will necessitate an examination of the plant and business of the corporation, and for that reason the plaintiff, in order to prepare itself for trial, should have an inspection of all the books, papers and documents of said utility corporation and all of its plants in so far as the same will show, or tend to show, the reasonable value of the plant and what it actually costs to manufacture and deliver electricity and power.

3. The Public Utilities Commission should, under suitable conditions, permit the Federal Mining Company to inspect the books, files and papers of said utility corporation in so far as they contain matter relating to, or in any way connected with, the fixing of the value of the plant and the reasonable rate to be charged for the product, and should give plaintiff ample time and opportunity for that purpose.

4. Under the provisions of sec. 49 of said act, said commission is not bound by the technical rules of evidence, and by the provisions of sec. 29 of said act, said commission is authorized to do all things necessary to carry out the spirit and intent of said act.

Original proceeding in this court for a writ of review to determine the validity of an order of the Public Utilities Commission refusing to require the Washington Water Power Company to permit the plaintiff to examine all of its records, files and papers. The order and action of the Commission *affirmed.*.

James E. Babb, A. H. Featherstone, C. W. Beale and John H. Wourms, for Plaintiff.

The opinion of the commission, as to privacy of the power company's books and as to a fishing examination, is based on rules that would be applicable in a suit between private individuals or private corporations and which were established before *Munn v. Illinois* (1877), 94 U. S. 113, 24 L. ed. 77, in which it was first established that any business affected with a public interest is subject to public control and direction— the power to regulate rates and get information necessary being the police power. (*Town of Ukiah v. Snow Mountain Water & Power Co.* See many cases cited in opinion of California Railroad Commission, Feb. 27, 1914, Case No. 483, Decision No. 1309.)

The resulting change in the attitude of the courts in investigating the books and accounts of such corporations is declared in *Wilson v. United States,* 220 U. S. 614, 31 Sup. Ct. 545, 55 L. ed. 610; followed in *Burnett v. State,* 8 Okl. Cr. 639, 129 Pac. 1110, 47 L. R. A., N. S., 1175, notes; *Hammond Packing Co. v. Arkansas,* 212·U. S. 322, 29 Sup. Ct. 370, 53 L. ed. 530, 15 Ann. Cas. 645.

Accounts kept of such a public use belong to the public use, and the consumers have an interest therein, and the facts reposing therein as to the success and failure of the enterprise, which affects the rate to be paid. (*New York Edison Co. v. City of New York,* 133 App. Div. 728, 118 N. Y. Supp. 238; *United Electric Light & Power Co. v. City of New York,* 133 App. Div. 732, 118 N. Y. 240; *Brigham v. Zaiss,* 48 App. Div. 144, 62 N. Y. Supp. 706; *Veiller v. Oppenheim,* 75 Hun, 21, 26 N. Y. Supp. 1051; *Thomas v. Guy B. White Co.,* 113 App.

Div. 494, 99 N. Y. Supp. 297; *People v. American Ice Co.*, 54 Misc. Rep. 67, 105 N. Y. Supp. 650; *Home Telephone Co. v. City of Carthage*, 235 Mo. 644, Ann. Cas. 1912D, 301, 139 S. W. 547, 48 L. R. A., N. S., 1055.)

W. H. Hanson, *Amicus Curiae.*

There is no authority in an equity proceeding where a general and extensive ramifying account is to be taken, but holds that it is necessary to have the inspection and examination before the commencement of the trial. The staying by injunction of a court of equity of trial of law case is a uniform and unquestioned precedent in support of that position. (*Arnold v. Pawtuxt Val. Water Co.*, 18 R. I. 189, 26 Atl. 55, 19 L. R. A. 602; *Hillman v. United States*, 192 Fed. 264, 112 C. C. A. 522; *In re Grant*, 198 Fed. 708; *Simon v. American Tobacco Co.*, 192 Fed. 662; *Dreier v. United States*, 221 U. S. 394, 31 Sup. Ct. 550, 55 L. ed. 784; *Wheeler v. United States*, 226 U. S. 478, 33 Sup. Ct. 158, 57 L. ed. 309; *Burnett v. State*, 8 Okl. Cr. 639, 129 Pac. 1110, 47 L. R. A., N. S., 1175, and notes.)

John P. Gray, for Washington Water Power Co.

"The plaintiff's right to a discovery does not extend to all facts which may be material to the issue, but is confined to facts which are material to his own title or cause of action; it does not enable him to pry into the defendant's case, or find out the evidence by which that case will be supported." (Pomeroy's Eq. Jur., sec. 201; Story's Equity Pleadings, secs. 317, 325; *Newkerk v. Willett*, 2 Caines Cas. (N. Y.) 269; *Cully v. Northern Pac. Ry. Co.*, 35 Wash. 241, 77 Pac. 202; *Carpenter v. Winn*, 221 U. S. 533, 31 Sup. Ct. 683, 55 L. ed. 842; *Owyhee Land & Irr. Co. v. Tautphaus*, 109 Fed. 547, 48 C. C. A. 535; *Oro Water, Light & Power Co. v. Oroville*, 162 Fed. 975; *State ex rel. Boston & M. Con. Copper & Silver M. Co. v. District Court*, 27 Mont. 441, 94 Am. St. 831, 71 Pac. 602; *Ex parte Clarke*, 126 Cal. 235, 77 Am. St. 176, 58 Pac. 546, 46 L. R. A. 835.)

The question òf the organization of the defendant company, how its capital stock was issued and how it was paid for, and all kindred questions, is immaterial to the controversy. (*Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819.)

J. H. Peterson, Atty. Genl., J. J. Guheen, T. C. Coffin and E. G. Davis, Assts., for Defendant.

In passing upon requests to examine the books and records of corporations, the test of reasonableness is always applied, and in general, parties litigant who desire to inspect the books and records of opposing paities, must first make some showing as to the necessity of such inspection, and their demands must specify with reasonable exactness the particular books and papers which they desire to examine. (*Hale v. Henkel,* 201 U. S. 43, 26 Sup. Ct. 370, 50 L. ed. 652; *Wilson v. United States,* 221 U. S. 361, Ann. Cas. 1912D, 558, 31 Sup. Ct. 538, 55 L. ed. 771.)

SULLIVAN, C. J.—The Federal Mining and Smelting Company filed its formal complaint with the Public Utilities Commission of this state on the 5th of September, 1913, under the provisions of the public utilities act, approved March 13, 1913 (Sess. Laws 1913, p. 247). The purpose of said proceeding was to litigate the reasonableness of rates for power furnished to the plaintiff by the Washington Water Power Company.

The complaint was answered by the water power company and thereafter the complainant made a motion for the production and inspection of all books and records, or certified copies thereof, of the water power company within the state of Idaho, for examination by the attorneys or expert accountants of the plaintiff or petitioner. It was the purpose of this motion, if favorably actrd upon, to secure to the plaintiff company an opportunity to examine the books and records of the defendant company and to obtain therefrom such information as it might consider necessary in preparing itself for the hearing before the commission. That motion was

resisted by the Washington Water Power Company on the following specified grounds:

First, that it will be unjust, unfair, unreasonable and work an irreparable damage to the defendant to make any such order.

Second, that the commission is without power to make such an order under chapter 61, Laws of 1913, or any other statute or law in the state of Idaho.

Third, that the making of such an order would be a violation of the defendant's right under and contrary to the provisions of the fourth amendment to the constitution of the United States.

After a hearing, the Utilities Commission denied the motion. Thereafter the plaintiff company filed a petition for a rehearing which was denied. Application was made to this court under the provisions of sec. 63a of said utilities act for a writ of review to review the action of said commission in refusing to grant said motion.

After a consideration of the three grounds above set forth by the Washington Water Power Company against the granting of said motion, we conclude that there is nothing in said first and third grounds. Then the question directly presented is whether it was within the power of the commission to grant said order under said public utilities act, or any other statute or law of the state, and if it possessed the authority and power to grant such order, whether it erred in denying said motion.

Counsel for plaintiff contends that the commission has full power and authority under the provisions of said public utilities act, and especially under sec. 55 thereof, to grant its motion for an inspection of all the books and records of said corporation, and that it erred in refusing to do so. To determine this question several sections of said act must be referred to and construed.

·Sections 26(d), 29, 54 and 55 are as follows:

"Sec. 26(d).  No information furnished to the commissioner by a public utility except such matters as are specifically required to be open to the public inspection by the pro-

visions of this act, shall be open to the public inspection or made public except on order of the commission, or by the commission or a commissioner in the course of a hearing or proceeding. Any commissioner, officer or employee of the commission who, in violation of the provisions of this subsection, divulges any such information shall be guilty of felony.''

''Sec. 29. The Public Utilities Commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of the provisions of this act.''

''Sec. 54. The commission, each commissioner and each officer and person employed by the commission shall have the right at any and all times to inspect the accounts, books, papers and documents of any public utility, and the commission, each commissioner and any officer of the commission or any employee authorized to administer oaths shall have power to examine under oath any officer, agent or employee of such public utility in relation to the business and affairs of said public utility; *provided,* that any person other than a commissioner or an officer of the commission demanding such inspection shall produce under the seal of the commission his authority to make such inspection; and, *provided, further,* that a written record of the testimony or statement so given under oath shall be made and filed with the commission.''

''Sec. 55. The commission may require, by order served on any public utility in the manner provided herein for the service of order, the production within this state at such time and place as it may designate, of any books, accounts, papers or records kept by said public utility in any office or place without this state, or, at its option, verified copies in lieu thereof so that an examination thereof may be made by the commission or under its direction.''

Said sec. 54 is the only part of said act which attempts to designate the officers or individuals who may be authorized to inspect the books, accounts and records of a public utility, and applies equally to public utilities whose records are kept within the state and to those whose records are kept without the state.

Sec. 55 relates to the books and records of public utilities doing business within the state but whose books and records are kept without the state.   It provides that the commission may require such books and records, or verified copies in lieu thereof, to be produced within the state "so that an examination thereof may be made by the commission or under its direction."   The books and records of such corporations kept without the state are clearly subject to the same limitations as is the inspection of such books and records as are kept permanently within the state.   There can be no doubt of the right of the complainant to ask that the books and records of this foreign corporation be produced within the state at the time of the hearing, and the right to such facilities as are necessary in order to enable it to inspect the books, records and documents specified by it in order to enable it to meet the issues presented by the case before the commission.   Reasonable time for such inspection and examination as may be found necessary under the circumstances of each case must be given by the commission.   All of which is conceded by the commission in its written decision in this case denying the motion for such examination and inspection of the records of the defendant company as was asked by the plaintiff in this proceeding; but as we understand it, this motion of the plaintiff calls for the production of any and all documents, books, records, letters and papers of the defendant company, whether the matters contained in them relate to the question in issue or not, and if granted, would permit it to make such use as it might desire of all the records, etc., thus inspected.

The question is then directly presented: What was the purpose intended to be served by the provisions of said sections of said act with reference to the inspection of the books and records of public utilities?   It was no doubt for the purpose of enabling the commission to ascertain fully at any time the manner in which any public utility is conducting its business and whether it is violating the law or acting unjustly toward the public in the matter of rates.   Those sections were not intended to enable those who complain against public utilities to go on "fishing expeditions" through all the cor-

respondence, papers and records of a utility corporation to see if they can obtain some evidence against the legality of the acts of such corporation, or to procure information that might be valuable to one contemplating the purchase or duplication of such plant, or for the purpose of procuring information that one was not entitled to without the consent of the corporation. In a contest between a party and a utility corporation in regard to rates, etc., the commission has power to require the utility to produce any record, contracts or papers bearing upon the questions in issue in the case, or that would throw any light upon the question of reasonable rates. It evidently has full power and authority in the matter of compelling the production of evidence in the case before it.

Said section 54 gives the right and authority to the commission, or each commissioner and any officer or person employed by the commission, at any and all times to inspect the accounts, books, papers and documents of any public utility; and also provides that any person other than a commissioner or officer of the commission demanding such inspection shall produce under seal his authority to make such inspection. That section refers to persons who are authorized to inspect the books and records of a utility by the commission, and does not refer to the production of any books or records required to be produced and introduced as evidence on the trial of some question or issue before the commission.

It is provided by sec. 26(d) that no information furnished to the commissioner by a public utility, except such matters as are specifically required to be open to public inspection by the provisions of said act, shall be open to the public inspection or made public except in the course of a hearing or proceeding, and it is there also provided that any commissioner, officer or employee of the commission who in violation of the provisions of such section divulges any such information shall be guilty of a felony. What would be the necessity or reason for making it a felony for a commissioner or an employee of the commission to reveal certain facts that might be obtained from an investigation of the books and records

of a utility if it were the right of any and all persons to procure an order from the commission for the inspection of all books, records and files of a utility and not make them guilty of a felony if they should reveal any of the facts which they might discover on such investigation?

The provisions of said act are sufficient to give authority to the commission, and do give it, to make all investigations of books and other documents of public utilities necessary for the decision of all questions that might arise involving the control by the commission of such utilities within the state. Sec. 29 of said act empowers the commission to supervise and regulate every public utility in the state and "to do all things necessary to carry out the spirit and intent of the provisions of this act." It has full power and authority to require the production of all records and documents that may be pertinent and necessary to use as evidence in cases brought before said commission and to grant the litigants time and place sufficient for an examination of the same. The motion of the· plaintiff company in this case is based on the ground that the issues raised by the pleadings require an investigation into all of the affairs of the defendant company from its organization to the present time. It no doubt has the right to an examination of all books, contracts and files of the company that would tend in any wise to fix the value of the plant and the cost of the manufacture of electric power, and that would show, or tend to show, reasonable rates to be charged for the same.

The commission has authority under said act to determine or pass upon the relevancy and competency of all evidence offered to prove or disprove the issues made by the pleadings, and this authority vested in the commission should be liberally exercised to enable parties to properly prepare for trial. The plaintiff's business is affected with a public interest and is subject to state control and direction, and the power of the commission to regulate rates and get information necessary for that purpose is a power that has been conferred by said act on said board, and the commission has the legal right to demand information as to the business involved and

as to the value of all the property involved therein as a basis for the regulation of its business and the fixing of reasonable rates for its services.

Under the provisions of sec. 46 of said act, the accounts of such corporations are required to be so kept that in case of a controversy over rates or service, there may be reliable evidence to which the consumer may appeal. Each consumer of the product of a utility corporation is a party in interest in its public use, and such corporations' accounts should be subject to the reasonable inspection of the consumer in any matter affecting his relation with the utility, so far as reasonable rates are concerned. The relation established by law between the utility and the consumer is that the consumer must pay a fair return on the value of assets reasonably acquired and necessary for the accomplishment of such utility's object and purpose. The ascertainment of a just rate involves, among other things, the reasonable cost of the plant, the cost of production, transportation to the point of intended use, and so forth.

In *New York Edison Co. v. City of New York,* 133 App. Div. 728, 118 N. Y. Supp. 238, it was held that the defendant was entitled to an inspection of the books and records of the plaintiff company, and an examination of its plant, so far as the same would show, or tend to show, the actual cost of production and distribution of electricity during the time it was alleged to have been furnished. In that case the court said, among other things: "And it is quite apparent that the defendant, unless it can have an inspection and discovery, cannot prepare its case for trial. How can it determine what is the reasonable and fair market value, unless it can ascertain what it actually cost the plaintiff to manufacture and deliver?" And after reviewing a number of cases, the court further said: "Here the plaintiff's business is the manufacture and sale of electricity to thousands of customers, and the reasonable cost thereof can only be determined by showing the amount of capital invested, the actual cost to manufacture and deliver, including taxes and all disbursements for that purpose, and the depreciation of its plant, plus a fair

return on the money invested. This will necessitate an examination of its entire business, and for that reason the defendant, in order to prepare itself for trial, should have an inspection of all the books, papers and documents of the plaintiff, and of its plant, in so far as the same will show, or tend to show, what it actually cost it to manufacture and deliver the electricity for which a recovery is sought.''

In *Brigham v. Zaiss,* 48 App. Div. 144, 62 N. Y. Supp. 706, the court said:

''Manifestly, the plaintiff has no way of ascertaining what the net amount is, except from the defendants themselves, or from an inspection of their books of account. . . . . No good reason can be suggested why they should not furnish the same to the plaintiff, and, in the interest of justice, we think they should be required, under suitable conditions, to permit the plaintiff to inspect their books and to take copies of them, in so far as they contain entries relating to, or in any way connected with, the subject matter of the action.''

In *Hart v. Ogdensburg & L. C. R. Co.,* 69 Hun, 497, 23 N. Y. Supp. 713, the court said: ''The discretion vested in the court should be liberally exercised, to enable parties to properly prepare for trial,'' and then quoted from *Powers v. Elmendorf,* 4 How. Pr. 60, as follows:

''I can see no good reason why a party should be permitted to withhold from the knowledge of his adversary documentary evidence affecting the merits of the controversy, only to surprise him by its production at the trial, unless, for some satisfactory reason to be made apparent to the court, each party ought to be required, when it is desired, to disclose to the other any books, papers and documents within his power which may contain evidence pertinent to the issue to be tried.''

In *Interstate Commerce Com. v. Baird,* 194 U. S. 25, 24 Sup. Ct. 563, 48 L. ed. 860, the court said:

''The inquiry of a board of the character of the Interstate Commerce Commission should not be too narrowly constrained by technical rules as to the admissibility of proof. Its function is largely one of investigation, and it should not be ham-

pered in making inquiry pertaining to interstate commerce by those narrow rules which prevail in trials at common law, where a strict correspondence is required between allegation and proof."

The principle or rule there declared is substantially 'the rule that should govern the Public Utilities Commission in its hearings and investigations as provided by sec. 49 of said act, and it is there provided that in the conduct of investigations before said commission it should not be bound by the technical rules of evidence.

By sec. 29 of said act it is declared that said commission is vested with power and jurisdiction to supervise and regulate every public utility in the state and do all things necessary to carry out the spirit and intent of said act.

In *Matthews v. Board of Corp. Commrs. of N. C.*, 106 Fed. 7, the court said: "The basis of all calculations as to the reasonableness of rates is the fair value of the property used for the convenience of the public," and then proceeded to state what may be taken into consideration in determining such rate.

The commission no doubt will admit all competent evidence offered showing or tending to show what would be a reasonable rate for the service rendered by said public utility, and it must permit the plaintiff to inspect all books and papers of the water power company that would throw any light upon that subject, and we understand from the decision of the commission that it will do so and give the plaintiff ample time and opportunity to examine them.

The defendant corporation has been in existence nearly a quarter of a century, and all of its files and records, contracts and communications cover a great many years, much of which can have no application whatever to the issues made by the pleadings, and it is stated in the opinion of the commission as follows:

"No investigation by the accountants of the commission has as yet been begun, and no examination of the works and premises of the defendant has as yet been undertaken by the engineers of the commission. In view of the present status

of the case, we think it would be going rather far for the commission to grant the application in its present form. We doubt very seriously if the statute confers such extreme visitatorial power to be exercised by the commission over public service corporations, and as the commission will have full power to control the investigation to be had, ample opportunity during the hearing can be granted to the plaintiff company to make such investigation of the books and records of the defendant as will insure a fair hearing of all the issues involved. If after the hearing before the commission has begun it may appear that it will be necessary for the plaintiff company to inspect any book, account, record or other document in the possession of the defendant, and that such record is material to the issues in the case, it will be the duty of the commission to require the production of such document and to grant to the plaintiff company permission to inspect such documents, although the same may have to be inspected by the experts of the plaintiff company and time afforded them for such inspection. Questions will arise during the hearing, as we imagine, concerning such proceeding, and when they do arise, the commission will consider the same and grant such facilities and opportunities to the plaintiff company to make such examination of the books, accounts and other records of the defendant as may appear just and reasonable."

The above quoted part of the decision of the commission clearly sets forth the construction placed by the commission on the powers given them by said act in the matter under consideration. The commission has full power and authority to compel the production of all material evidence on the trial of said case, and on proper application no doubt will do so; but in the first instance, it is for the commission to determine whether the documents or evidence demanded is material and necessary, and if the commission concludes that it is not, it is its duty to decline to receive immaterial evidence and to decline to grant any application of the parties for an inspection of the records and files of a public corporation which it considers is not material to any of the issues involved.

The plaintiff is not entitled to an examination of the records and files of a corporation which can possibly have no bearing on the issues of the case, and to compel the corporation to produce the same would be most unreasonable, and the constitution of the United States, as well as the constitution of the state of Idaho, prohibits unreasonable searches and seizures. (Sec. 17, art. 1, State Const.; *Hale v. Henkle,* 201 U. S. 43, 26 Sup. Ct. 370, 50 L. ed. 652; *Wilson v. United States,* 221 U. S. 361, Ann. Cas. 1912D, 558, 31 Sup. Ct. 538, 55 L. ed. 771.). In general, parties litigant who desire to inspect the books and records of opposing parties must make some showing as to the necessity of such inspection, and their demands must specify with reasonable exactness the particular books and papers which they desire to examine. If it is made to appear that an examination of any of the books, records and files of the corporation is necessary to a proper determination of the issues involved, the commission certainly will require their production on its own motion or on the application of the plaintiff, before or during the hearing, and give ample opportunity for an inspection thereof. But the commission has no authority under said act to permit a party litigant to examine the records and files of a utility corporation that do not pertain to the issues made by the pleadings, and the commission has no authority under said act to permit a party to examine the records and files of the Washington Water Power Company in a case pending before it, which are not pertinent or material to the issues made by the pleadings.

We therefore conclude that the action of the commission in refusing to grant said motion must be affirmed, and it is so ordered, with costs in favor of the commission.

Truitt, J., concurs.

(November 19, 1914.)

### ON PETITION FOR REHEARING.

SULLIVAN, C. J.—A petition for rehearing has been filed in this case, and it is contended that in our order affirming the decision of the Public Utilities Commission we overlooked the fact that the plaintiff had made certain specific demands for the examination of particular records, naming them, among which were (1) the balance sheets for the calendar years 1904–1913, inclusive, as shown by the affidavit of Beukers (see p. 36 of record) ; (2) the ledgers and journals of the power company covering the entire existence of that company; (3) the minute-books of the corporation with reference to the stock issue of one million dollars and the bond issue of $500,000; (4) a complete list of the names of the consumers of the power company in the Coeur d'Alene district in the state of Idaho, both past and present.

It appears that the expert accountants of the plaintiff, by mutual understanding or agreement with the officers of the water power company, commenced an inspection of some of the books and records of said company, but had not proceeded very far before said officers refused any further inspection of their records, claiming that they were unwilling to have any accountant employed by the Federal company or the complainants, or any of them, to make an investigation of any of the books, accounts, papers, records or documents whatsoever of the water power company, but were willing that an examination should be made by the regular official accountant of the Public Utilities Commission or by the regular official engineer of that commission.

We intended to hold in our original opinion, and now hold, that the commission must require the water power company to produce for examination by the Federal Mining Company its expert accountants and others employed by the Federal Mining Company, all books, papers and accounts that would throw any light upon the question of reasonable rates to be

charged for electrical energy or power furnished to the Federal Mining Company by the water power company, as well as a complete list of the names of the consumers of electricity furnished by said power company in the Coeur d'Alene District in the state of Idaho, and the books, papers and accounts showing the rate charged each consumer and class of consumers and the amount of electrical power furnished to each, since such matters are proper to be investigated in determining reasonable rates, and the commission must compel the water power company to produce the same and give the Federal company reasonable opportunity and time for a thorough investigation of such books, papers and documents.

In this case it will be necessary to apportion the expenses of the utility supplying the service to the several classes of consumers. Such consumers are divided into well-defined groups or classes, such as street lighting, commercial power, street railway, etc. Each of those classes demands its special equipment or class of service. Some costs are peculiar to certain kinds of service and not to others, and it is only right and proper that the Federal Mining Company should be furnished all the documentary evidence that would throw any light upon the several classes of consumers and the amount charged each consumer for the service given.

As bearing upon this question, see *City of Racine v. Racine Gas Light Co.* (1911), 6 W. R. C. R. 228, 244, 235.

It is stated by counsel in their petition for rehearing that it is not clear to them whether or not it was the intention of this court to disapprove of a portion of the opinion in the case of *New York Edison Co. v. City of New York,* 133 App. Div. 732, 118 N. Y. Supp. 240, which distinguished the cases requiring a specification of the particular books required from the rate cases, where all of the books were required. Counsel quotes from that opinion as follows: "This will necessitate an examination of its entire business, and for that reason the defendant, in order to prepare itself for trial, should have an inspection of all the books, papers and documents of the plaintiff," and there stops the quotation with a period, when, as a matter of fact, in the original opinion

a comma follows the word "plaintiff" and the following language is used thereafter: "And of its plant, *in so far as the same will show, or tend to show,* what it actually cost to manufacture and deliver the electricity for which a recovery is sought." That is identically what we intended to hold in the original opinion in this case, and we did hold in effect that it was the duty of the commission to grant to the plaintiff the right to inspect all books, papers and documents of the water power company and of its plant, *in so far as the same will show, or tend to show,* what it actually cost to manufacture and deliver electricity, electrical energy or power.

It is to be supposed that the power company keeps a list of its customers, and that its books indicate the class to which each customer belongs, the amount of electricity furnished to each, and the price charged each customer therefor. Such a list showing the above indicated facts would no doubt bear upon the reasonable rates to be charged. And all such lists, books, records and accounts should be produced by the power company for inspection by the Federal company, and as we understand the decision of the commission, it will require the power company to produce all such books, records and accounts for the inspection of the Federal company, and time and opportunity given for a thorough inspection thereof.

The court does not question the good faith of the Federal company in making the application it did in this case, and it must be distinctly understood that this court holds that it is the duty of the commission, under the law, to require the power company to produce all of its books, records and accounts so far as the same will show, or tend to show, what it actually cost to manufacture and deliver electricity to the plaintiff.

This decision is rendered without prejudice to the rights of the Federal company to renew its application before the commission for the inspection of the books, records, accounts, etc., above indicated, that show or tend to show what it actually cost to manufacture and deliver electricity to the plaintiff. And the commission may permit the Federal company under

the present application, through its officers and experts, to examine all such books, accounts and records.

The petition for rehearing is denied.

Truitt, J., concurs.