Gallagher & Sons et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued March 11, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Frank W. Hatfield,* with him *Ralph C. Busser, Jr.,* and *Harold S. Shertz,* for protestants, appellants.

*H. Ray Pope, Jr.,* with him *William M. Rutter,* for Pennsylvania Public Utility Commission, appellee.

*Paul H. Rhoads,* with him *John B. Gest* and *Weiss, Rhoads & Sinon,* for applicant, appellee.

OPINION BY HIRT, J., July 17, 1947:

In the order appealed from, the Pennsylvania Public Utility Commission issued a certificate of public con-

venience to Baker Driveaway Company, Inc., a foreign corporation. Its principal business is truck transportation as a common carrier in interstate commerce. The certificate authorizes that company to do business within the Commonwealth and to transport automobiles, and parts accessory thereto, "between points in the City and County of Philadelphia and from points in said city and county to points within an airline distance of 50 miles of City Hall in Philadelphia."

Appellant, E. A. Gallagher & Sons of Philadelphia has held a certificate for a number of years authorizing it, among other things, to transport automobiles between points in Philadelphia and points within 200 miles therefrom. The public service which the order authorizes the Baker company to perform will be in direct competition with that of the Gallagher partnership, but with that of no other common carrier. Nu-Car Carriers, Inc., the other appellant, will not be affected in its present field of operation. It has a certificate issued by the Public Utility Commission authorizing it to transport automobiles generally throughout Pennsylvania. The business office of Nu-Car Carriers is in the City of Chester, where it serves an assembly plant of the Ford Motor Company. Fully 95% of its business consists in the transportation of Ford cars from the Chester plant to other points in Pennsylvania and elsewhere. The carriage of used cars accounts for the remaining 5% of its business. Nu-Car Carriers has truck equipment for the transportation of automobiles similar to that of the Baker company. But it is not supplying any public transportation service in Philadelphia and has not indicated an intention of actively entering that field. It maintains no office in Philadelphia and is not listed in the Philadelphia Telephone directory. The service which Nu-Car Carriers, Inc., could perform, but does not, has no bearing on the adequacy of existing public facilities for the transportation of automobiles in the Philadelphia area prior to the certification of the Baker company.

E. A. Gallagher & Sons, so far as the testimony goes, is the only carrier in the Philadelphia area supplying the particular public service authorized by the certification of the Baker company. A phase of the business of the Gallagher partnership has been the transportation of heavy equipment. It has converted two of its flat-top trucks, formerly used for that purpose, and has adapted them to the carriage of automobiles. Each truck is equipped to carry but two cars. A third car may be towed in the rear of the truck.

Philadelphia dealers in the past have absorbed about three percent of all automobiles manufactured in the Middle West, including the Detroit area. Prior to the. interruption of production in 1941, automobiles in general were delivered to Philadelphia from the factories by one of three methods: By so-called "driveaway" service over the highways; by trucks designed to carry a number of cars; or by water to Buffalo and thence to destination by one or the other of the above means. Transportation by railroad was not common because of an adverse differential in the cost. The Interstate Commerce Commission, in 1945, reduced freight rates on automobiles from the Middle West, with the result that the difference between the cost of delivery by rail and by other methods, became negligible. Much of the business of the Baker company, formerly, had consisted in so-called "truckaway" transportation of new automobiles from factories in the Detroit area to dealers in the East. It used equipment for the purpose designed to carry four automobiles. It owns 60 such tractor-trailer units and in 1941 transported 5,744 automobiles from factories to the Philadelphia area. The railroads, capitalizing on reduced tariffs, have entered the competitive field of carriage of new automobiles. Box cars of suitable size have been equipped with mechanical devices which insure delivery of four automobiles in each car, at destination, without damage to them. Advantages in

favor of the railroads, with the differential in freight rates removed, have attracted to them much of the business of transporting new automobiles to Philadelphia. Anticipating that a certificate of public convenience would be issued to it, the Baker company organized Automobile Warehouses, Incorporated, which leased a freight platform from Reading Railroad at Seventeenth and Callowhill Streets in Philadelphia. It has been unloading automobiles from railroad cars at that place and when required, has serviced them so that they could be driven away on their own power. The services of this corporation are now available to the public generally and it does not have exclusive use of the platform. The business of the Baker company in Pennsylvania will be the delivery of new automobiles by truck from railheads in Philadelphia, to dealers and other consignees in the Philadelphia area. For this service it will provide five tractor-trailer units each equipped to carry four automobiles.

Our function on appeal is to determine whether there is error of law or lack of evidence to support "the finding, determination or order of the Commission." Public Utility Law as amended, July 3, 1941, P. L. 267, 66 PS 1437. In granting certificates of public convenience the Public Utility Commission performs a purely legislative function upon authority delegated to it by the legislature. The Public Utility Law, in Article II, section 203, 66 PS 1123, imposes a basic limitation upon the exercise of the power in the provision that the commission must "find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." The order of the commission was based upon such finding in this case and our sole inquiry in this appeal is whether there is substantial evidence with rational probative force supporting the finding. *Horn's Motor Express, Inc. v. Pa. P. U. C.*, 148 Pa. Superior Ct. 485, 26 A. 2d 346.

A number of automobile dealers testified that there is a positive demand for additional trucking service in Philadelphia to eliminate the necessity for delivery of automobiles from railheads by "driveaway" or towing methods. There is testimony that buyers demur when offered automobiles which, by odometer reading or otherwise, indicate that they have been driven over the road; that in such instance there is always the question whether the car has been damaged from inadequate servicing, excessive speed or other improper operation. The argument has some force that dealers have accepted "driveaway" service from railheads in Philadelphia, with the attendant risk of damage en route, because adequate truck delivery of the type which they prefer has not been available. Evidence of the need of the service of the Baker company outside of Philadelphia is not as full as it might be. But a distributor of Nash automobiles serving 76 dealers in Eastern Pennsylvania —13 of them in Philadelphia and immediate suburbs— testified as to the preference of the dealers for delivery of automobiles by the "truckaway" method. There is also substantial evidence of the demand for delivery of automobiles by truck of the type supplied by the Baker company with a load capacity of four automobiles.

It must be conceded that there has been a growing demand for delivery of automobiles by truck from railheads in Philadelphia to consignees throughout the territory here involved. And the ultimate question before the commission was whether an additional carrier should be permitted to compete with the Gallagher partnership in supplying the dealers with this service. That was an administrative question. *York Express Co. v. P. S. C.,* 110 Pa. Superior Ct. 197, 168 A. 327. Determining whether available facilities are sufficient and adequate to supply the demand is an administrative procedure and the extent to which there shall be competition in intrastate transportation service is always largely a matter

of policy committed by the legislature to the sound judgment and discretion of the Public Utility Commission. Its decision of the question if based on competent and relevant evidence will not be disturbed "unless it is so capricious, arbitrary, or unreasonable as to amount to error of law or a violation of constitutional rights": *John Benkart & Sons Co. v. Pa. P. U. C.*, 137 Pa. Superior Ct. 13, 7 A. 2d 588.

Before permitting an additional carrier to enter a competitive field, it is not necessary for the commission to find that the service of the applicant is absolutely indispensable; it is sufficient if it find that the service is reasonably necessary for the accommodation or convenience of the public. *Alko Express Lines v. Pa. P. U. C.*, 152 Pa. Superior Ct. 27, 30 A. 2d 440. The opinion of the commission recites: "It is clear from the record that local cartage of automobiles from railroad sidings in Philadelphia has grown in importance, and that the railroads have provided adequate facilities on their lines for the prompt and efficient unloading of automobiles. To satisfy consignees, prompt and reasonable local hauling service is necessary. The record discloses a need for the service proposed by the applicant." And a certificate of public convenience was issued by the commission on its finding, from the evidence, that "approval of the applications of Baker Driveaway Company, Inc. . . . is necessary or proper for the service, accomodation and convenience of the public." The findings and the order are supported by substantial evidence of probative force. And there is nothing capricious, arbitrary or unreasonable in allowing competition in truck transportation of automobiles, in the interest of adequate service throughout the Philadelphia area. *Alko Express Lines v. Pa. P. U. C.*, supra.

Order affirmed.