Lyons Transportation Company et al., Appellants,
*v.* Pennsylvania Public Utility Commission.

Argued April 20, 1948. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*H. Ray Pope, Jr.,* with him *William W. Knox* and *Marshall G. Matheny,* for protestants, appellants.

*Thomas M. Kerrigan,* with him *Charles E. Thomas,* for Public Utility Commission, appellee.

*Frank A. Sinon,* with him *Rhoads & Sinon,* for applicants, appellees.

OPINION BY ROSS, J., September 29, 1948:

These are appeals from an order of the Public Utility Commission, amending a limited certificate of public convenience and granting additional rights as a common carrier to Russell W. Eades, Allan M. McDarment and Wilfred Hanlon, partners, doing business as Erie Trucking Company, hereinafter referred to as applicant.

The applicant is at present the holder of a certificate of public convenience authorizing it "To transport, as a Class C carrier, property from the warehouse of the Erie Warehouse Company and pool cars in the City of Erie, Erie County, to points within eighty (80) miles by the usually traveled highways of the limits of said city, To transport, as a Class D Carrier, property between points in the County of Erie; To transport, as a Class D carrier, petroleum, petroleum products, service station equipment and accessories, from the bulk plant of the Sun Oil Company, located in Harborcreek Township, Erie County, to points within eighty (80) miles by the usually traveled highways of the said plant, and vice versa . . ." The applicant, also, is the holder of a certificate from the Interstate Commerce Commission, authorizing it to transport interstate shipments of general commodities between the city of Erie and points in Pennsylvania and New York within eighty miles of Erie.

On November 25, 1946, the applicant filed an application with the Public Utility Commission for an amendment to its certificate authorizing it to transport "Property from points in Erie County to points within a radius of fifty miles of the limits of said county, and vice versa." Protests were filed by thirteen certified carriers including the appellants, Lyons Transportation Company and Valley Motor Freight. After various hearings were held, the commission on March 8, 1948, approved the application and ordered the issuance of a certificate authorizing the applicant "To transport, as a Class D carrier, property (excluding petroleum products in bulk and tank trucks, household goods in use . . . and other articles requiring specialized handling or equipment employed in moving household goods in use) from points in the County of Erie to points within fifty (50) miles of the limits of said county, and vice versa" subject to certain conditions. From this order of the commission Lyons Transportation Company and Valley Motor Freight, hereinafter referred to as protestants, have appealed to this Court.

The function of this Court on appeal is to determine whether there is error of law or lack of evidence to support "the finding, determination or order of the Commission." *Gallagher & Sons v. Pa. P. U. C.*, 161 Pa. Superior Ct. 243, 53 A. 2d 842. "The extent of our review on appeal from an order of the commission granting or refusing a certificate of public convenience is limited. We cannot disturb the commission's order except for lack of evidence to support the findings, for other error of law, or for a violation of constitutional right." *Ferrari v. Pa. P. U. C.*, 163 Pa. Superior Ct. 24, 60 A. 2d 602. In this appeal there is no violation of constitutional rights or "other error of law" involved and consequently the only matter for our determination is whether there is evidence to support the commission's finding and its order. The weight to be given evidence and conflicts in

testimony are matters exclusively for the commission, the fact finding body, to determine.

The protestants are scheduled route carriers over main highways within the area covered by this application. They called as witnesses a number of shippers over their routes who testified that the service rendered to them by the protestants is satisfactory to them and that they have no need for additional service. However, the issue in this case is not whether the service rendered by the protestants is satisfactory to the particular shippers who use that service, or whether those shippers have need for additional service; the issue is whether there is a public need for the service which the applicant proposes to render. *Ferrari v. Pa. P. U. C.,* 163 Pa. Superior Ct. 24, 60 A. 2d 602, supra.

Section 203, Art. II, of the Act of May 28, 1937, P. L. 1053, the Public Utility Law, 66 PS 1123, provides that the commission, in granting a certificate of public convenience, "shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience or safety of the public; . . ." In this case, the commission found "that existing motor carrier transportation service in the area affected by this application is not of a type or character which satisfies the public need and convenience and that the proposed service would tend to correct or substantially improve that condition; . . ." This finding is sufficient compliance with the Act (*Kulp v. Pa. P. U. C.,* 153 Pa. Superior Ct. 379, 33 A. 2d 724) and since there is competent and substantial evidence to support it, the finding will sustain the order.

After reviewing the testimony in considerable detail, the commission, as the basis for its order, stated: "We believe the record in this proceeding establishes an obvious need for motor transportation service to and from the off-route points not served by protestants. It also appears from the record that coördination of applicant's inter and intrastate activities with resultant econ-

omies and increased efficiency of operation may reasonably be expected to promote the service, accommodation, and convenience of the public. There can be no question that economies in the cost of providing common carrier service have a direct relation to reasonable charges for service, to standards of service, and to the ability of the carrier to maintain, operate and improve service. We believe that the obvious need for service to and from off-route points when coupled with the economies and increased efficiency of operation and service which would result from the coördination of applicant's intra and interstate operations affords sufficient reason for approval of the application. Moreover, the conclusion that the application should be approved is further supported by the testimony of those witnesses who expressed a need for additional service to or from points on the routes of the protestants."

Russell W. Eades testified relative to requests for the service which the applicant will be authorized to render if its application is granted. This is competent testimony and its weight was for the commission. *Gongaware & Sons v. Pa. P. U. C.,* 163 Pa. Superior Ct. 9, 60 A. 2d 364. He testified in part: "We have had repeated calls to pick up return shipments coming back into Erie . . . We received repeated calls, one right after another, from customers to haul into this territory and we had to turn them down. . . . We have been asked to deliver into all this territory proposed in this application and we couldn't do it." The witness named several specific shippers as a "few" of the companies requesting service. He testified that the Erie Meter Systems, one of the prospective shippers, had "to have service to practically every cross road in the country and at the present time there isn't any service to two-thirds of the points to which they wish to ship. . . . We propose to haul shipments from the Erie Meter Systems to individual gas stations in the territory."

The traffic manager of Erie Meter Systems, which manufactures gasoline service station equipment, testified: "By selling as we do, under the terms of our sales, we endeavor to make store-door delivery and that may be to most any point at which a buyer may be located, which is very often off the beaten path, and, therefore, we need a service by carriers who can make deliveries to the customers at those points." The traffic supervisor of the Ruberoid Company, with two plants in Erie, testified that "the number of customers we have is restricted by lack of service into certain areas of this application" and that the approval of the "present application" would benefit his company. The manager of K. L. Frank Company, electric appliance distributors, testified that while the applicant now transports materials for his company from the warehouse in Erie, it may not transport "small appliances we do not keep at their warehouse, and, therefore, we were unable to have them taken out in the same shipments, necessarily shipping by some other trucker to some other point" and that the granting of the certificate would be of benefit to his company because "We have twelve counties through this territory, about one hundred and thirty accounts, and some of them are in the smaller points which the other trucking companies do not get in, necessitating our shipping and interchanging on other lines. Our products are fragile and the less handling, the less danger there is of damaged merchandise." A retail merchant and distributor of farm equipment in Cochranton testified that the granting of the application would be of benefit to him and "to my customers also" because it "would expedite deliveries to the points of shipment." The superintendent of Yost Manufacturing Company in Meadville testified that the granting of the application would benefit his company and its customers by eliminating present "delays in deliveries and pick-ups." The vice president of Erie Concrete and Steel Company testified that his company has a need for the present service to "the outlying sections, and on

through routes where other trucking companies have to transfer, which gives me slower delivery." The general manager of Irwin Manufacturing Company in Garland testified: "We are having difficulty with our present facilities for transporting our products, and there are certain towns that we are having considerable difficulty getting into. It is a matter of too many transfers, I imagine," and in response to the question, "Is it true insofar as your company is concerned the proposed service of the Erie Trucking Company is necessary?" answered, "Definitely." The president of Thomas Flexible Company testified that the granting of the certificate would benefit his company because "I think it would speed up deliveries." Testimony similar in substance was given by a number of other shippers.

The application in this case is not to extend the area of applicant's operations but to extend its operating rights within an area which it is already serving. It presently has the right to transport interstate shipments to any point within the area and the right to transport intrastate shipments from pool cars and a warehouse in the city of Erie and from the bulk plant of the Sun Oil Company to any point within the area of the application.

According to the testimony of Eades, the applicant now covers practically all of the territory embraced in the application almost daily with interstate freight which moves from the Erie warehouse, but it may not transport return intrastate shipments which have been tendered to it and as a result its trucks frequently return empty to Erie. Furthermore, since it is limited on intrastate movements to pick-ups at the warehouse or pool cars in Erie, applicant may not accommodate a shipper who has something to be carried from the warehouse or pool car to a particular customer and who also has something else in his own store which he wishes delivered to the same customer at the same time. By way of illustration, he stated that if the General Electric Company has a refrigerator at the warehouse and a radio

in its Erie store, both of which are to go to the same dealer in Oil City, the applicant may take the refrigerator but not the radio. The superintendent of the Sun Oil Company testified that although the applicant may pick up at its bulk plant products, etc., for delivery, it may not pick up other material at another location which goes to the same customer and that as a result his company has "to use two different trucking companies and pay two freight charges."

What was said in *Mod. Trans. Co. v. Pa. P. U. C.*, 139 Pa. Superior Ct. 197, 12 A. 2d 458, is pertinent to the present case. At page 203, Judge PARKER stated: "The order of the commission has not extended the area of operations of the particular carrier but has permitted it to serve persons whose doors this utility passed in its former operations and has permitted the carrier to give additional service within the same area and on the same routes to those at whose doors they were actually stopping but whose demands they could only satisfy in part." And at page 204: "We have no doubt the commission gave due weight to the fact that York Motor was passing many points where at little additional cost it might furnish more service at less average cost and at the same time accommodate the public. To promote such economies is one of the duties of the commission."

As stated by Judge DITHRICH in *Gongaware & Sons v. Pa. P. U. C.*, 163 Pa. Superior Ct. 9, at page 11, 60 A. 2d 364, at page 365, supra: "Despite the able argument of counsel for appellant, we are not persuaded that this case presents anything more than an administrative question to be decided by the Commission." The order of the commission is based on competent and relevant evidence and is not capricious, arbitrary or unreasonable. Consequently, we may not disturb it. *John Benkart & Sons v. Pa. P. U. C.*, 137 Pa. Superior Ct. 13, 7 A. 2d 588.

The order of the commission is affirmed, at the cost of appellants.