Pittsburgh & Lake Erie Railroad Co., Appellant
*v.* Pennsylvania Public Utility Commission.

412

Argued November 21, 1951. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Paul J. Winchel,* with him *Reed, Smith, Shaw & McClay,* for protestant, appellant.

*Henry M. Wick, Jr.,* with him *M. B. Davidson, Samuel W. Pringle, John R. Bredin* and *Dalzell, Mc-Fall, Pringle & Bredin,* for protestant, appellant.

*John E. Fullerton,* with him *Thomas M. Kerrigan,* Assistant Counsel, and *Lloyd S. Benjamin,* Acting Counsel, for Public Utility Commission, appellee.

*William C. O'Neil,* with him *Thorp, Reed & Armstrong,* for Pittsburgh Coke & Chemical Co.

*Jerome Solomon,* for J. Kenny Transfer, Inc., intervenor, appellee.

OPINION BY RHODES, P. J., January 17, 1952:

This is an appeal from the order of the Pennsylvania Public Utility Commission granting J. Kenny Transfer, Inc., the right to transport dry cement by motor truck, as a Class D carrier, for Pittsburgh Coke and Chemical Company, from its plant on Neville Island, in Pittsburgh, to points within 175 miles of the limits of the City of Pittsburgh, and the return of refused, rejected or damaged shipments. Applicant owns and operates 105 pieces of motorized equipment in the Allegheny County area under existing certificates. The ability of the applicant to render the proposed service is not questioned. The issues on this appeal relate to the public necessity for the certificate and to certain matters of procedure.

The original application of J. Kenny Transfer, Inc., requesting the additional right to transport cement

was filed on March 28, 1950. A simultaneous request for temporary authority to render the proposed service was denied by the Commission. Protests to the application and to the request for temporary authority were filed by twelve carriers, three being railroads and nine being motor carriers. Petition for modification of the order denying temporary authority was also refused. Hearings on the application were held in Pittsburgh during May, June, and September, 1950. Testimony was presented by three of the protestants—Pittsburgh and Lake Erie Railroad Company, and the Pennsylvania Railroad Company (the present appellants), and DeBolt Transfer, a motor carrier. Three of the protesting motor carriers, W. J. Dillner Transfer Company, Moore-Flesher Hauling Company, and John Benkart & Sons presented no testimony in opposition to the application in view of a stipulation that these "three protestants within their certificated rights, whatever they may be as construed by the Commission, are ready, able and willing to transport cement and mortar in bags at the present time and in so far as the movement of bulk cement is concerned, they are ready, willing and able to acquire such tank trailers as may be necessary to handle the bulk business of the supporting shipper, Pittsburgh Coke and Chemical Company."

Following the hearings, at which J. Kenny Transfer, Inc., the applicant, called three witnesses, and three of the protestants presented testimony, the Commission on February 26, 1951, issued a short form order approving the application for a certificate of public convenience granting the additional right to transport, as a common carrier, cement for the shipper. Appeals were then taken to this Court. We returned the record to the Commission which, on September 24, 1951, issued in lieu of the order of February 26, 1951,

an order affirming its original order, approving the application and granting a certificate of public convenience to the applicant. Appellants in this Court are the Pittsburgh and Lake Erie Railroad Company and the Pennsylvania Railroad Company.

At the hearings the applicant limited the extent of its application to that area in the Commonwealth of Pennsylvania lying west of an imaginary line extending south from the New York state border and passing through Coudersport, State College, Huntingdon, and McConnellsburg. It is agreed that the application should be thus limited, and we will therefore remand the record to the Commission with direction to modify the order and so limit the certificate of the applicant.

Appellants ask that this Court reverse the order of the Commission as unsupported by substantial evidence in view of the entire record. We do not sit as a super-administrative board; our task under the statute and decisions is well defined. We determine whether there is "error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights." Section 1107 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1437; *Shenandoah Suburban Bus Lines, Inc., Case,* 158 Pa. Superior Ct. 638, 640, 46 A. 2d 26, affirmed 355 Pa. 521, 50 A. 2d 301; *Gallagher & Sons v. Pennsylvania Public Utility Commission,* 161 Pa. Superior Ct. 243, 247, 53 A. 2d 842; *Hutchison v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 319, 77 A. 2d 744; *Cage v. Public Service Commission,* 125 Pa. Superior Ct. 330, 333, 189 A. 896. The Commission found that the existing service for the transportation of cement available to the Pittsburgh Coke and Chemical Company at its plant on Neville Island, Pittsburgh, is not of a type or character which satisfies the public need and convenience, and that the

proposed service would tend to correct or substantially improve that condition. Our inquiry is whether there is substantial evidence to support the finding of public necessity for the certificated service. *Aizen v. Pennsylvania Public Utility Commission*, 163 Pa. Superior Ct. 305, 313, 60 A. 2d 443. In this respect, substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pennsylvania State Board of Medical Education and Licensure v. Schireson*, 360 Pa. 129, 133, 61 A. 2d 343. Substantial evidence has also been said to mean evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred. *National Labor Relations Board v. Columbian Enameling & Stamping Co.*, 306 U. S. 292, 300, 59 S. Ct. 501, 83 L. Ed. 660. See, also, *Wilbert v. Commonwealth of Pennsylvania Second Injury Reserve Account*, 143 Pa. Superior Ct. 37, 48, 17 A. 2d 732. "Substantial evidence" is synonymous with "competent and relevant evidence having a rational probative force." Evidence to be substantial must have rational probative force.

Appellants maintain that there is no such evidence in the record as would support the Commission's finding of public necessity for the proposed service. With this contention we do not agree.

In support of the application, three witnesses testified. Joseph Kenny, vice-president and general manager of J. Kenny Transfer, Inc., the applicant, testified that his company was operating 105 pieces of motor transport equipment in the Pittsburgh area under various certificates; that to perform the additional service the company was purchasing four special tank trailer trucks equipped with mechanical loading devices for use exclusively in transporting dry cement in bulk; that four of these had been ordered and were at the factory branch in Pittsburgh ready for immedi-

ate delivery; that the company also had flat trailers ready to haul cement in bags; and that the company is financially able to purchase any necessary equipment that may be required.

C. P. Schrecongost, traffic manager of the Pittsburgh Coke and Chemical Company, testified that this shipper sold cement to building supply dealers, ready mixed concrete dealers, construction contractors, product manufacturers, and railroads. He also testified that customers of his company were located within a 175-mile radius of Pittsburgh. But he specifically confined the area to points in Pennsylvania lying west of a north and south line drawn through Coudersport, State College, Huntingdon, and McConnellsburg. He named the following places, inter alia, within the above area, as locations of company customers for cement: Emporium, Phillipsburg, State College, Altoona, Cresson, Everett, Clearfield, St. Marys, Ridgway, Johnsonburg, Kane, Bradford, Warren, Corry, Erie, Oil City, DuBois, Johnstown, Greensburg, Uniontown, Washington, Wilkinsburg, East Liberty (Pittsburgh), Verona, New Kensington, Freeport, Cheswick, Etna, Pittsburgh (proper), Pittsburgh (north side), Emsworth, Bridgeville, Monongahela and Charleroi. This witness also testified that 60 to 70 per cent of the cement sold by his company moved by rail, and the balance by water carrier or by trucks owned by customers. He testified that the rail service was inadequate and slow, and gave thirty-two instances of shipments by rail involving one hundred miles or less which required from two to five days in transit; that customers ask delivery the same day as ordered, within areas of one hundred miles of Pittsburgh, and two-day delivery to points beyond one hundred miles; that the railroads have not been able to supply such service, but that it can be supplied by motor carriers; that his company required motor serv-

ice to meet competition by other cement manufacturers in western Pennsylvania to whom such service was available; that the Pittsburgh Coke and Chemical Company will continue to use rail service, but that motor truck service is needed to supplement the former.

Adam J. Miller, sales manager of Pittsburgh Coke and Chemical Company's cement division, testified on behalf of the applicant. He testified that his company's sales area included all of western Pennsylvania west of a north and south line through State College, as described by the preceding witness. He further testified that approximately 61 per cent of their cement shipments were by rail, 26.7 per cent by truck, and 12.3 per cent by water; that their traffic department determines the type of carrier and routing to be used unless the customer designates otherwise. This witness further testified that he tours the sales territory once or twice a year; that 26 per cent of the shipper's customers in the area involved do not have rail sidings or rail facilities; that this estimate was based in part on personal observation and partly on answers to a questionnaire which he sent to his salesmen. According to this witness, the shipper is seeking truck transportation to meet competition by other cement manufacturers who have the advantage of truck delivery, including bulk shipment by motor truck in special hopper tank trailer units; that over a period of years the trend has been towards bulk delivery of cement; that rail service is not satisfactory and buyers complain that rail delivery is too slow. Although this witness had made inquiry, he knew of no available truck service which would fulfill the needs within the proposed delivery area.

Protestants called three witnesses to establish their contention that existing rail facilities within the area of the application were adequate, and that certificated

motor truck service was available within a 50-mile radius of Pittsburgh, within which area 90 per cent of Pittsburgh Coke and Chemical Company's cement shipments moved. Neither Pittsburgh and Lake Erie Railroad Company nor the Pennsylvania Railroad Company has direct trackage into the shipper's plant at Neville Island; the cars are picked up at an interchange. Pittsburgh and Lake Erie Railroad Company has covered hopper cars that are presently available to haul cement, and according to protestants' witnesses it can serve the entire application area through connecting carriers, including the Pennsylvania Railroad Company and the Baltimore and Ohio Railroad Company. There was also testimony from such witnesses that the Pittsburgh and Lake Erie Railroad Company is able to furnish next day delivery within 65 miles of the shipper's plant. However, documentary evidence introduced by the Pittsburgh and Lake Erie Railroad Company and by the Pennsylvania Railroad Company shows that rail delivery takes at least two days, and in some instances as much as four, five, or six days to points within the area covered by the application. As to speed the service offered by both appellants within the application area is substantially the same, and neither appellant can give direct rail service to all the points within the shipper's sales area. For highway construction contractors truck service is generally indispensable.

A representative of DeBolt Transfer, one of the protestants, testified that his company was willing and desirous of hauling cement for the Pittsburgh Coke and Chemical Company within the application area. This company is certificated to haul property within a 50-mile airline radius of Homestead, Pennsylvania, and it has certain other rights to haul to more distant points with special equipment. It was testified that this car-

rier was willing and able to purchase fifteen to eighteen hopper tank trailer units specially designed for hauling bulk cement. An offer to haul cement in bulk was made by this protestant subsequent to the time of the filing of the application by J. Kenny Transfer, Inc. It is also to be noted that neither DeBolt Transfer nor any other motor carrier who appeared as a protestant has appealed from the Commission's order.

Our review of the record discloses ample evidence in quality and quantity to support the Commission's finding of public necessity for the proposed service. The Commission in its order made this pertinent statement: "Certainly, when the nature of an industry such as the cement business requires speedy delivery of its product on occasion, there is no justifiable reason why a shipper should be forced to utilize solely the facilities of a carrier that can not provide the needed service. . . . motor transportation is needed as an additional service to meet that type of service offered by its [shipper's] competitors and to accommodate those of its customers who either are not equipped for rail service or demand motor carrier service to meet their particular needs."

In permitting a carrier to enter a competitive field, the Commission need not find that the proposed service to be rendered by the applicant is absolutely indispensable; it is sufficient that the service is reasonably necessary for the accommodation or convenience of the public. *Gallagher & Sons v. Pennsylvania Public Utility Commission*, supra, 161 Pa. Superior Ct. 243, 249, 53 A. 2d 842. There is no legal requirement that the Commission's order must be supported by any particular type of evidence as long as the evidence is legally sufficient. Testimony as to requests for additional service and as to complaints of delay in rail shipments is competent evidence; and testimony by customers of the Pittsburgh Coke and Chemical Company, while

relevant and possibly desirable, was not indispensable. See *Highway Express Lines, Inc., v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 145, 148, 63 A. 2d 461. We consider proof of necessity within the area generally as sufficient.

We are aware that the effect of the Commission's order in the present case may be to create competition among carriers, but the extent to which there shall be such competition, including that between rail service and truck service, in intrastate transportation is largely a matter of policy which the Legislature has committed to the sound judgment and discretion of the Commission. *John Benkart & Sons Co. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 13, 7 A. 2d 588; *Gallagher & Sons v. Pennsylvania Public Utility Commission,* supra, 161 Pa. Superior Ct. 243, 248, 53 A. 2d 842. The Commission recognized that the proposed truck service would be supplementary to the present rail service, and that shipments by rail would continue in those cases where such service was the more efficient and practicable.

Appellants allege that there was a denial of procedural due process at the Commission hearings, and they base their allegations on an examiner's rulings on exclusion and admission of evidence. Appellants, with other protestants, in the course of the hearings filed with the Commission a petition for subpoena duces tecum. The petitioners requested that a subpoena duces tecum be issued against the Pittsburgh Coke and Chemical Company requiring it to produce (1) the written contract between the applicant and the shipper; (2) the questionnaire allegedly sent to shipper's salesmen in order to determine the number of customers in the area involved who did not have rail facilities, together with the replies thereto; (3) the records of the shipper showing the geographical location of its

present customers in the application area. Petitioners also sought by such subpoena the production from the applicant of the contract for the purchase of four Trailmobile trailers designed to haul cement in bulk, and "All documents, memoranda, or records prepared by the applicant showing the percentage of time during which the equipment to be placed in the exclusive service of the Pittsburgh Coke & Chemical Company must be in use in order to enable the applicant to break even or to make a profit on this operation." Applicant filed an answer to the petition for subpoena duces tecum in which it asserted that the requested documentary evidence was not material or relevant; that the requests for the production of such records was not made in good faith; and that all pertinent evidence was in the record. The Commission denied the petition and refused to compel the production of the records sought by petitioners and enumerated in their petition. Appellants now claim that this constituted reversible error on the part of the Commission.

As an administrative agency the Commission performs a legislative function and exercises such power as has been properly delegated to it by the Legislature. The Commission is given by statute the power to subpoena witnesses and "compel the production of such books, records, papers, and documents as it may deem necessary or proper in, and pertinent to, any proceeding, investigation, or hearing, held or had by it, . . ." Section 1009 of the Act of May 28, 1937, P. L. 1053, 66 PS §1399. Cf. *Womelsdorf Consolidated Water Co. v. Pennsylvania Public Utility Commission*, 160 Pa. Superior Ct. 298, 301, 50 A. 2d 548. The action of the Commission in granting or refusing a subpoena duces tecum is governed by the general principles and rules of evidence. While the Commission as an administrative agency having quasi judicial functions is not limit-

ed by the strict rules relating to the admissibility or exclusion of evidence in actions at law, the essential principles should be observed. *Shenandoah Suburban Bus Lines, Inc., Case,* supra, 158 Pa. Superior Ct. 638, 644, 46 A. 2d 26; *Schuylkill Railway Co. v. Public Service Commission,* 268 Pa. 430, 432, 112 A. 5. Applicant's witness Miller had testified fully regarding the questionnaire and replies thereto. This witness and also the witness Schrecongost gave in considerable detail the geographical location of the customers of Pittsburgh Coke and Chemical Company. The records requested as to these items would have been largely cumulative evidence and not essential to the proceeding or absolutely necessary for a proper determination of the issue involved. The same is true of the exact terms of the contract between the applicant and the shipper. The general terms of this contract were injected on cross-examination of applicant's witnesses. Neither contract referred to in the petition for subpoena duces tecum was relevant to the issue before the Commission, which was the need for the proposed service. The Commission may refuse to require the production of records which are not necessary to a proper determination of the issue or issues involved. See *Federal Mining & Smelting Co. v. Public Utilities Commission,* 26 Idaho 391, 143 P. 1173, 1177. We find no abuse of discretion on the part of the Commission in refusing to direct the issuance of a subpoena duces tecum on the record before it. 5 Stand. Pa. Prac. §601, p. 455; Cf. *Pennsylvania Publications, Inc., v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 279, 291, 32 A. 2d 40.

Appellants complain of the admission of the testimony of applicant's witness Miller wherein he testified that 26 per cent of the cement customers of the Pittsburgh Coke and Chemical Company did not have rail

sidings which would permit the delivery of cement ship-ments directly by rail. We have previously referred to the fact that this testimony was based in part on per-sonal observation and in part on answers given by salesmen to the questionnaire. Appellants did not ob-ject to this evidence, when offered, on the ground that it was hearsay; they claimed the questionnaire and re-plies thereto were the best evidence. We are of the opinion that the testimony of this witness was admis-sible in this proceeding before the Commission. But if it were not admissible under the rules of evidence applicable to court proceedings it would not constitute reversible error, as there was sufficient competent and relevant evidence to support the Commission's find-ing of public necessity for the proposed service with-out reliance on the questioned evidence. The substance of appellants' complaint in this connection is that the Commission admitted the alleged incompetent testi-mony of the witness Miller and excluded the testimony of the witness C. J. Murray, Supervisor of Station Service of the Pennsylvania Railroad Company, who was called by the protestants. The testimony of the latter witness, based on oral and written reports of railroad investigators, would have been to the effect that certain customers of the Pittsburgh Coke and Chemical Company had transferred their business to other suppliers of cement because they could purchase more cheaply elsewhere and not for the reason that they were dissatisfied with rail service. The testimony of this witness was obviously hearsay and the Commis-sion upon objection properly refused to admit it on that ground. Moreover, it certainly would not be de-terminative of the issue involved. Significantly the railroad records in evidence established the fact that rail delivery could not equal motor truck service where time in transit was an important factor. We do not

reverse a Commission's order on the admission or exclusion of evidence unless the action of the Commission in ruling thereon constitutes clear error of law fatal to the order or is so arbitrary as to amount to a denial of due process. Section 1107 of the Act of May 28, 1937, P. L. 1053, as amended by the Act of July 3, 1941, P. L. 267, §3, provides, inter alia: "Any appeal to the Superior Court shall be determined upon the record certified by the commission to the court. All evidence in such record so certified may be considered by the court regardless of any technical rule which might have rendered the same inadmissible, if originally offered in the trial of an action at law." 66 P·S §1437. Our primary concern is whether there is reasonable and substantial basis in the proofs for the order of the Commission. *Schuylkill Railway Co. v. Public Service Commission,* supra, 268 Pa. 430, 433, 112 A. 5.

We find no merit, after an examination of the record, in appellants' contention that the hearings of the Commission were held in an atmosphere prejudicial to appellants; nor do we find an absence of any essential element of procedural due process at any stage of the proceeding.

The order of the Commission is affirmed, except as to the extent of the area covered by the certificate of public convenience; the order of the Commission shall be modified and the certificate limited as indicated in this opinion.