Noerr Motor Freight Inc. et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued March 12, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

324

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for protestant, appellant.

*James H. Booser,* with him *McNees, Wallace & Nurick,* for protestants, appellants.

*William J. Wilcox,* for protestant, appellant.

*Edward Munce* and *Thomas M. Kerrigan,* Assistant Counsel, for Public Utility Commission.

*Leo Daniels,* with him *Prichard, Lawler & Geltz,* for applicant, intervening appellee.

OPINION BY RHODES, P. J., July 17, 1956:

These four appeals, taken by protestant motor carriers, are from the order of the Pennsylvania Public Utility Commission of March 14, 1955, as supplemented by its order of February 14, 1956, granting an extension in operating territory to applicant, Joseph R. Prostko, trading and doing business as Altoona-Pittsburgh Freight Line, on his application of July 31, 1953.

The matter was previously before us on appeal from the original order. After argument and reargument we remanded the record to the commission for clarification of that order, and to make sufficient specific findings of fact; the record was thereupon to be returned to this Court. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 62, 118 A. 2d 248. The supplemental order now before us is in response to that remand. Our present concern is whether proper clarification has been made of the original order, and whether the findings are now adequate, are supported by substantial evidence, and sustain the order. See *Zurcher v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 343, 98 A. 2d 218; *Modern Transfer Company v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 46, 115 A. 2d 887.

It appears that prior to the application of July 31, 1953, Altoona-Pittsburgh Freight Line had been authorized to render service as a class A motor carrier between the City of Pittsburgh and the Hollidaysburg-Altoona-Tyrone area, and as a class D motor carrier between the County of Allegheny and that area. The application sought to extend both class A and class D rights eastward to Huntingdon, Mt. Union, Lewistown, Reedsville, Mifflintown, and Mifflin; and in addition it requested permission to serve the off-route point of Bellwood. The commission, after several hearings, granted the requested enlargment of both class A and class D rights specifically excluding the right "to render local service between points on the extension, spur routes, and off-route point."[1] There were exceptions and ex-

---

[1] Applicant's proposed extension is from Hollidaysburg to Mifflintown on Highway Route 22 with spur routes to Mifflin on Highway Route 35, to Mt. Union on Highway Route 522, and to Reeds-

clusions relating to commodities in bulk, explosives, household goods in use, and property requiring the use of special equipment; the transportation of newspapers and magazines between points served by Drenning Delivery Service was also excluded.

The order, as now supplemented, granting these rights contains a detailed analysis of the evidence concerning the public need for applicant's additional service; it also contains findings and conclusions based upon that evidence as it relates to the class A and class D rights of applicant. Since the enlargement of both class A and class D rights applies to the same territory, the evidence presented in support of the additional class A rights is largely applicable to the additional class D rights in so far as it indicates inadequacy of existing service and the extent of the requests for applicant's service. A difference is in the western terminal areas, class A being limited to the City of Pittsburgh and class D applying to the County of Allegheny.[2] These western terminal areas were established in previous proceedings, and are material in this case principally in determining whether any need has been shown to justify extending the service from these terminal areas eastward beyond Hollidaysburg.

In its supplemental order of February 14, 1956, the commission made clear that it was intended that applicant have these operating rights under both his class A and class D certificates for the same extended routes

---

ville on Highway Route 322. Bellwood is an off-route point from Highway Route 220 between Hollidaysburg and Tyrone, which is a portion of applicant's original certificated route.

[2] As to class A and class D carriers by motor vehicle, see *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 62, 118 A. 2d 248; *Modern Transfer Co., Inc. v. Pennsylvania Public Utility Commission*, 139 Pa. Superior Ct. 197, 199, 200, 12 A. 2d 458.

outside of Allegheny County and eastwardly beyond the Hollidaysburg-Altoona-Tyrone area. The commission in that order also stated that class A rights granted to applicant included the right to render local service between points on his existing class A route and points on the extended class A route. The commission also declared therein that applicant was authorized as a class D carrier to transport property from any point in the County of Allegheny to any point on the extensions east of Hollidaysburg and vice versa.

Separate findings of fact respecting class A rights and class D rights were made. These findings relate principally to the inadequacy of existing service.

The principal issue presently before us is the sufficiency of the evidence to sustain the commission's findings and order.

*Enlargment of Class A Rights to Huntingdon and Mt. Union.* The commission found an inadequacy of both rail and motor carrier service from the City of Pittsburgh to Huntingdon and Mt. Union. The rail service admittedly involves delays of two or three days in transit; the motor carrier service involves not only long delays in transit but also in pickup and delivery as well. Consignees at these points have found it necessary to search for their freight and pick it up themselves at the Altoona dock of the motor carrier protestant which is presently certified to serve that area; and some consignees have been obliged to use their own trucks for service to Pittsburgh or meet applicant's trucks at the nearest available point on the original route. There were occasions when business was diverted from Pittsburgh to other areas because of the poor carrier service. From our examination of the record we are of the opinion that the evidence supports the findings as to inadequacy of existing service and the need for applicant's proposed service to these points.

Applicant presented evidence in support of his application at three hearings. At the first, held in Pittsburgh on October 28 and 29, 1953, applicant testified that he was rendering direct overnight service to the Hollidaysburg-Altoona-Tyrone area, and that he proposed to extend that service eastward as we have indicated. He had received many requests to serve the additional points, and in some instances the consignees on the proposed extension came to his present authorized terminal in Duncansville, which is west of Hollidaysburg, to receive shipments from Pittsburgh rather than use other carriers. He presented a representative list of over one hundred such requests in the nine-month period preceding filing of his application, and he testified that these were only forty per cent of such requests. In addition six shipper witnesses testified that they had numerous and frequent shipments from the Pittsburgh area to Huntingdon and Mt. Union. They were unanimous in their complaint of existing service because of extended delays in pickup and in transit. One witness stated: "It's a rare occasion when they [existing carriers] will call and make a pickup on the same day that I request it. It's generally the second or third morning or the day after that." In comparison, he testified that applicant "picks up the same day we call him and he delivers the day after." The shipments involve such items as rubber footwear, hardware, sundries, drug store supplies, candy, and sporting goods. It was said that because of the competitive nature of the market and the inability of some consignees to stock these items prompt service is necessary. At the second hearing, held in Huntingdon on December 8, 1953, thirteen consignee witnesses testified in corroboration of the delays and the necessity for fast service. These witnesses said that the delays ranged from several days to as many as twenty. One witness testi-

fied that he received faster service on shipments of truck parts from Pontiac, Michigan, than he did from Pittsburgh. Another witness had diverted his business from Pittsburgh to Philadelphia for the same reason. The third hearing was held in Pittsburgh on January 14, 1954, at which seven shipper witnesses testified. Their testimony was in accord with that of the others as to delays in pickup and in transit, and as to complaints from consignees when shipments were made either by existing motor carriers or by rail. The competitive nature of the market and the need for prompt service was again emphasized. At the fourth, fifth, and sixth hearings evidence was presented by protestants as to the adequacy of existing service. In some respects they conceded the delays but asserted they were excusable. The evidence indicates, however, that these carriers had little interest in much of the freight destined to this area, and that the delays persisted in the periods when no excuse was available. They also predicted that applicant's certification would result in harmful competition. Whatever conflicts in the evidence existed, as well as the effect of competition, were matters for the commission; and we find no error in its appraisal of the evidence in this respect. The evidence sufficiently substantiates the public need for the extended service to Huntingdon and Mt. Union.

*Enlargement of Class A Rights to Lewistown, Reedsville, and Bellwood.* The evidence in support of this portion of the proposed extension is not as voluminous as that relating to Huntingdon and Mt. Union, and the requests for applicant's service to these points are not as numerous. As it relates to Lewistown, Reedsville, and Bellwood, the testimony comes from some of the same witnesses who were interested in Huntingdon and Mt. Union. However, it is substantial under the circumstances. The same delays in pick-

up and in transit appear as well as the competitive merchandising conditions necessitating better service. The traffic manager for the Rexall Drug Company in Pittsburgh testified that his company ships wholesale drug supplies and sundries to a number of stores on the proposed extension, including Lewistown, Reedsville, and Bellwood, as well as Huntingdon and Mt. Union. He had been using the service of Motor Freight Express which was unsatisfactory and resulted in complaints from the company's customers. For this reason his company was one of those using applicant's service to the nearest eastern point on applicant's present route where the shipments were then picked up by the consignees. Although inconvenient, it seems this method proved more satisfactory than other service. A witness for Rural Motor Express, an appellant and a competitor of applicant, admitted that consignees were using this type of service of applicant for Bellwood, and that a need existed for direct service.

Appellants contend that the evidence indicates only a few requests for service to Lewistown, and that consequently no substantial public need for applicant's service has been established. Admittedly, the amount of traffic in freight from Pittsburgh to Lewistown is smaller than that to Huntingdon and Mt. Union. What may constitute a need for service, indicated in part by the number of requests, depends upon the locality involved and the particular circumstances of each case. In an area such as Lewistown, where the requirements for transportation facilities from the Pittsburgh area are not great, fewer requests will be considered as substantial evidence of public convenience and need for such service. Furthermore, "No matter how unimpressive this testimony may appear . . ., it was competent testimony and therefore its weight was for the Commission." *H. J. Gongaware & Sons v. Pennsylvania*

*Public Utility Commission,* 163 Pa. Superior Ct. 9, 10, 60 A. 2d 364, 365. See *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 420, 85 A. 2d 646.

Appellant, Hartman's Transportation Company, asserts that, although there may be evidence of inadequacy of service by Motor Freight Express, there is no substantial evidence of inadequacy by Hartman, the other available motor carrier to Lewistown. This is not, as we view it, in accordance with the record. Although Hartman's service appeared adequate from the Harrisburg area, one witness testified to occasions when the service from Pittsburgh involved delays in pickup of three or four days; and these were within a few months of the date of the hearing. It was also indicated that Hartman lacked interest in shipments therefrom, and that this carrier did not actively solicit this business until after the application of July 31, 1953, was filed; thereafter the solicitation was occasional. Some shippers used Hartman only when they could not secure service from Motor Freight Express. A lack of interest in this business by all carriers until applicant filed his application clearly appears throughout the record. The shipping public need not be indefinitely inconvenienced by disinterested carriers. See *Cage v. Public Service Commission,* 125 Pa. Superior Ct. 330, 335, 189 A. 896. The additional competition of applicant, a matter within the commission's sound discretion, should tend to improve the service of the other carriers in the area. *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1),* 180 Pa. Superior Ct. 294, 306, 119 A. 2d 661; *Leaman Transportation Company v. Pennsylvania Public Utility Commission,* 175 Pa. Superior Ct. 553, 559, 106 A. 2d 901. The statements in *Hall's Motor Transit Company v. Pennsylvania Public Utility Commission,* 150 Pa. Su-

perior Ct. 60, 65, 66, 27 A. 2d 428, 430, are pertinent: " 'Consideration cannot be given to a carrier who has not been giving the public service to which it is reasonably entitled, until another enterprising carrier seeks to render competitive service in the manner demanded by the shipping public.' "

" 'We think that one of the weapons in the Commission's arsenal is the right to authorize competition where it is necessary in order to compel adequate service . . .' "

*Enlargement of Class D Rights to Huntingdon, Mt. Union, Lewistown, Reedsville and Bellwood.* The class D rights of applicant involve the same points on the extension as his class A rights, and the evidence of inadequacy of existing service is identical in some respects, and in its entirety it is of the same nature. The difference is largely as it relates to the western terminal areas. The commission again found an inadequacy in the existing service and the need for the proposed service. There were not as many witnesses to the requested enlargement of class D rights as to the requested enlargment of class A rights; but we think the evidence was substantial and sufficient. Witnesses from such points as Carnegie, Glenshaw, West Mifflin Borough, and Etna testified in support of the application in the same manner as the other witnesses. One of these a witness from the Ford Motor Company, testified that a considerable amount of freight moved from the Pittsburgh area to points on the proposed extension. He stated that Motor Freight Express was not interested in making any pickups of these shipments and that until a few days prior to the hearing Hartman had not manifested any interest. His company was obliged to use rail service, which was slow and brought complaints from consignees. It further appeared that several shippers formerly served by applicant from the

City of Pittsburgh have relocated elsewhere in Allegheny County. Other shippers in Allegheny County used their own trucks to deliver freight to Motor Freight Express docks in Pittsburgh because of its failure to provide adequate pickup service. The same lack of interest by existing carriers is evident throughout this testimony. The evidence indicates a need for this service by applicant, especially in view of the fact that it is complementary to the class A rights and would tend to promote a better service for the public being served by applicant. Applicant was not required to produce evidence as to the need for this proposed extended service from every point in Allegheny County; it is sufficient that on the record as a whole it was shown to be reasonably necessary. *Garner v. Pennsylvania Public Utility Commission,* 177 Pa. Superior Ct. 439, 453, 110 A. 2d 907; *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 421, 85 A. 2d 646.

*Local Service.* Applicant was apparently granted and was intended to have the limited right to render local service between points on his present route and points on the extension and spur routes and the off-route point. Appellants contend that there is not sufficient evidence to sustain this grant of authority.

Rule 201 of General Order No. 29 of the commission provides that a class A carrier is one operating "Between fixed termini or over designated routes." Rule 202 (a) of General Order No. 29 provides that a class A carrier "may receive and deliver property at any point in any township, borough or city which is on the route, and in townships contiguous to such cities or boroughs on the route, but shall not, unless specifically so authorized, engage in local transportation between points in any such borough or city." It is the position of the commission in the instant case that Rule 202 of

General Order No. 29 operates automatically to allow this local service. Rule 202 does contain a provision that such local service is authorized "Unless otherwise specifically provided in the certificate of public convenience, . . ." However, no standard is set up for the application of this specific exclusion provision, and it apparently rests solely in the discretion of the commission or upon commission policy. See *Metropolitan Edison Company v. Public Service Commission*, 127 Pa. Superior Ct. 11, 22, 191 A. 678. The error inherent in the commission's position is obvious. There would seem to be no reason why a carrier may not apply for a class A certificate between Pittsburgh and Philadelphia and establish a need for service between these two cities.[3] If the commission grants the class A authorization without making any specific exclusion, such carrier would seem automatically to have the privilege to transport property locally from and to any points between Pittsburgh and Philadelphia without having shown any public need for such extensive rights. Apparently the purpose of rule 202 is to meet realistically the transportation problem in many instances,[4] but the rule is not operative merely as a matter of policy or at the unlimited discretion of the commission in the absence of evidential support for its order.[5] Its findings and final order must have a substantial basis in the

[3] See *Motor Freight Express v. Pennsylvania Public Utility Commission (No.1)*, 180 Pa. Superior Ct. 294, 296, 119 A. 2d 661.

[4] See section 801 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1301; *Latrobe Bus Service v. Pennsylvania Public Utility Commission*, 175 Pa. Superior Ct. 164, 170, 103 A. 2d 442.

[5] Policy cannot be made a substitute for evidence (*Aizen v. Pennsylvania Public Utility Commission*, 163 Pa. Superior Ct. 305, 316, 60 A. 2d 443); and administrative discretion is not without some limitation (*Motor Freight Express v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 622, 627, 121 A. 2d 617).

evidence, and rule 202 (a) may operate only if there has been substantial evidence of public necessity as is required for the granting of any such additional rights. Sections 202 (c), 203 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §§1122 (c), 1123; *Lancaster Transportation Company v. Pennsylvania Public Utility Commission*, 169 Pa. Superior Ct. 284, 292, 293, 82 A. 2d 291.

In the instant case there was no evidence of any need for service between points on applicant's existing routes outside of Allegheny County and points on the extension and spur routes and the off-route point. The commission in its supplemental order states that it took notice of the fact that none of the protestant carriers is authorized to render direct service between some of the points on applicant's present route and points on applicant's proposed extended route. The protestants take issue with this conclusion. However, if there are no carriers certified to serve certain of these points, the commission has no authority to grant a certificate to a carrier to render such service without substantial evidence to support the grant. Naturally, relying on Rule 202 of General Order No. 29, there were no findings by the commission in the instant case that such local service was necessary or that existing service is not satisfactory. Applicant entered into a stipulation, and the commission made it part of its order, that he would not render local service between points on the extension and spur routes and the off-route point. There is no explanation for excluding this territory without also excluding local service between points on the existing route and the extended route. What reasons, if any, prompted this distinction are not apparent. This illustrates, in our opinion, the arbitrary manner in which rule 202 (a) may be applied when the commission fails to base its findings and order upon substantial evidence.

Assuming that there is a need for the local service which has been granted under rule 202, the record must properly show it; and it was the duty of the commission to specifically so find under the circumstances of this proceeding. Intermediate points on a route may be within an area where need has been established for the proposed service, but the evidence of necessity as it relates to the City of Pittsburgh or the County of Allegheny cannot support the grant of the right to render service from points outside the city or county to any point on the extended route and vice versa. The outside area is too extensive to be considered part of any general area for these evidentiary purposes. Cf. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 421, 85 A. 2d 646; *Garner v. Pennsylvania Public Utility Commission,* supra, 177 Pa. Superior Ct. 439, 453, 110 A. 2d 907. The "desired flexibility in administrative procedure does not justify an order without substantial evidence to support it." *Modern Transfer Company v. Pennsylvania Public Utility Commission,* supra, 179 Pa. Superior Ct. 46, 56, 115 A. 2d 887, 891. See *Leaman Transportation Corporation v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 303, 308, 33 A. 2d 721.

*Enlargement of Class A Rights and Class D Rights to Mifflintown and Mifflin.* The evidence, as we have indicated, substantiates the granting of the extension to Huntingdon, Mt. Union, Lewistown, Reedsville, and Bellwood, but we find no evidence concerning Mifflintown and Mifflin. The commission's order refers to none. In fact, applicant admits this situation but asserts that these two areas are in the same general area of Lewistown, and that the evidence of need in Lewistown is sufficient to indicate a need in Mifflintown and Mifflin. We cannot accept this argument. We recog-

nize, as we said in *Garner v. Pennsylvania Public Utility Commission*, supra, 177 Pa. Superior Ct. 439, 453, 110 A. 2d 907, 914, that it is not necessary that an applicant establish a present demand for his service in every square mile of the territory to be certificated, and that proof of necessity within the area generally is sufficient. But the evidence in the present record does not relate to any such general area or to representative points in a general area. It relates to Lewistown and Reedsville specifically. Mifflintown and Mifflin are twelve miles distant on a route other than that to Reedsville, and they cannot for the desired purpose be assumed to be in the Lewistown area. They are east of and outside the points to which the evidence related. In the absence of any evidence of a need for service to these points, the order cannot be sustained in that respect as to either class A or class D rights.

Moreover, the evidence does not support the commission's order wherein it grants applicant the right as a class D carrier to transport property from any point in Allegheny County to any point on the extended route east of Hollidaysburg and vice versa. Such right is limited to service between those points established in the evidence and to which we have referred in this opinion.

*Noerr Motor Freight, Inc.* One of the appellants, Noerr Motor Freight, Inc., complains on appeal of the failure of the commission to exclude any right of applicant to provide service to shippers that Noerr is specifically authorized to serve by virtue of its class D certificate. Noerr has no general commodity rights in the area; it is limited to certain shippers. Under applicant's present certification as extended, he would be authorized to serve the general public, including those shippers of Noerr who might desire applicant's service. None of those shippers appeared at any hearing before

the commission or complained of Noerr's service; there being no proof to the contrary Noerr's special service would appear adequate. Consequently, it is argued that the restrictions should have been imposed upon applicant. The burden was upon applicant to establish a public need for his proposed service. *Modern Transfer Co., Inc. v. Pennsylvania Public Utility Commission,* 139 Pa. Superior Ct. 197, 202, 12 A. 2d 458; *Lyons Transportation Company v. Pennsylvania Public Utility Commission,* 163 Pa. Superior Ct. 335, 338, 61 A. 2d 362; *Follmer Trucking Company v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 75, 79, 80, 90 A. 2d 294. To establish this need applicant was not required to show that every shipper at the point sought to be served required his service in order to preclude a restriction such as Noerr desires to have imposed. No carrier has a right to be guaranteed freedom from competition. *Leaman Transportation Company v. Pennsylvania Public Utility Commission,* supra, 175 Pa. Superior Ct. 553, 559, 106 A. 2d 901; *Hertz Drivurself Stations, Inc. v. Siggins,* 359 Pa. 25, 50, 58 A. 2d 464. It would seem that, as long as Noerr renders satisfactory service to its customers, it has little to fear from competing carriers. In fact, the certificates of other carriers, Motor Freight Express, Hartman's Transportation Company, and the Pennsylvania Railroad Company, are not so restricted, and they may, if they desire, compete with Noerr in this area. On this record there appears to be no pressing necessity for so restricting applicant; the commission did not abuse its discretionary power in refusing to do so.

*Order of the Commission.* The order of the commission is modified to exclude the right to render local service between points on applicant's existing route and points on the proposed extended route and spur routes and the off-route point of Bellwood; to exclude the

right to transport property to and from Mifflintown and Mifflin; and to limit applicant's additional right to transport property from the City of Pittsburgh and the County of Allegheny to the specific designated points on the proposed extended route and spur routes and the off-route point of Bellwood and vice versa.

As so modified, the order of the commission is affirmed; each party to these appeals to pay his or its own costs.