Pennsylvania Railroad Company et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued November 18, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Harris J. Latta, Jr.* and *W. D. Stewart,* for appellant.

*M. L. Silberblatt,* and *Bell, Silberblatt & Swoope,* for appellant.

*Lisle A. Zehner* and *Mercer & Buckley,* for appellant.

*Edward Munce,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*Henry M. Wick, Jr.,* with him *Samuel P. Delisi, John A. Vuono,* and *Delisi and Wick,* for applicant, intervening appellee.

OPINION BY RHODES, P. J., January 21, 1958:

These appeals are by The Pennsylvania Railroad Company, The New York Central Railroad Company, and The Baltimore and Ohio Railroad Company from an order of the Pennsylvania Public Utility Commission which granted to Blake Brown and Howard Brown, a partnership conducting a motor transportation business in the Borough of Curwensville, Clearfield County, under the name of "Brown Brothers," the limited right to transport coal to areas in eastern Pennsylvania for two coal companies which were previously served only by the railroads. The authorization of this limited motor transportation was based primarily on evidence of the existence of a shortage of rail cars for coal hauling during the "Lake Season," April to October, when iron ore is shipped over the Great Lakes to the steel mills.

Prior to this application Brown Brothers had authority to transport coal, clay, sand, lime, cinders, and other solid fuels between points in a radius of sixty air miles of the Borough of Curwensville, Clearfield County, with certain exceptions and limitations. On December 16, 1955, an application was filed with the commission to amend the existing certificate of public convenience of Brown Brothers in order to acquire the additional right to transport coal, clay, and sand in bulk in dump trucks from points in the counties of

Clearfield, Centre, Elk, Blair, Cambria, Clinton, and Jefferson to other points in Pennsylvania and vice versa. The additional rights sought by this application were extensive and greatly exceeded the rights eventually granted by the commission after receiving the evidence in support of the application. Protests were filed to the application by The Pennsylvania Railroad Company, The New York Central Railroad Company, and three individuals who apparently were also in the transportation business. Hearings were held February 10, April 3, and May 3, 1956. On May 21, 1956, The Baltimore and Ohio Railroad Company was granted leave by the commission to intervene in opposition to the application. On January 2, 1957, after the filing of briefs, the commission issued an order, in short form, modifying and amending the certificate of public convenience of Brown Brothers to include the right, as a class D carrier, to transport in dump trucks coal for the Bradford Coal Company and Thomas Brothers Coal Company, sand from the Borough of Montoursville to the plant of E. M. Brown, Inc., and clay for the Haws Refractories Company. The three railroad companies appealed to this Court from the portions of the order granting applicant the right to transport coal. The other protestants did not appeal. On February 18, 1957, we remanded the record to the commission for preparation of a proper order in conformity with the requirements of section 1005 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1395. On March 8, 1957, the applicant, Brown Brothers, was allowed to intervene as a party appellee in these appeals. On May 29, 1957, the applicant requested the commission to modify the territorial delineation in the grant of authority to transport coal for the Bradford Coal Company. On July 8, 1957, the commission entered an order pursuant to our re-

mission and granted to the applicant the following additional rights:

"(a)   To transport, as a Class D carrier, coal, in dump trucks, for Bradford Coal Company from points in the County of Clearfield to points located beyond an airline distance of sixty (60) miles of the limits of the Borough of Curwensville, Clearfield County, east of a north-south line drawn through said Borough.

"(b)   To transport, as a Class D carrier, coal, in dump trucks, for Thomas Brothers Coal Company from points in the counties of Clearfield and Jefferson to the City of Philadelphia, Philadelphia County, and within twenty-five (25) miles of City Hall in said city."

In granting such additional rights the commission found that the existing service was inadequate and unsatisfactory, and that it would be a convenience to the public to permit applicant to compete with the protestant railroads to such limited extent.

The applicant was also given the limited right to transport sand to E. M. Brown, Inc., and to transport clay for Haws Refractories Company, as we have previously noted.   The latter rights are not involved in these appeals.

Appellant railroads present two questions—(1) whether the evidence supports the grant of authority to transport coal to areas as extensive as the commission has determined, and (2) whether the commission erred in granting permanent authority to transport coal instead of temporary authority to meet what the railroads contend was a temporary need.   The ability of the applicant to render the authorized service is not questioned.

As we have repeatedly stated, our review is not to substitute our judgment for that of the commission,

but to determine whether there is error of law or lack of evidence to support the order of the commission or violation of constitutional rights. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 415, 85 A. 2d 646.

In support of the application the first witness was Blake Brown, one of the partners of Brown Brothers. We shall summarize his testimony. The applicant, for sixteen years, has held a certificate of public convenience, and has been authorized to transport coal, clay, sand, lime, cinders, and other solid fuels between points in a radius of sixty air miles of the Borough of Curwensville where the headquarters and facilities of applicant are located. The application for additional rights to transport coal was filed because of requests to have coal hauled outside applicant's existing authorized territory in the eastern part of Pennsylvania. The practicability of transporting bulk commodities by dump truck over long hauls has improved in the last few years because of an increase in the allowable weight limit in Pennsylvania from 45,000 to 60,000 pounds, thereby permitting net loads of fifteen to twenty tons. Applicant owns trucks equipped with deisel engines which tend to make long hauls economical.

The traffic manager of the Bradford Coal Company, Cecil E. Morris, also testified in support of the application. His company ships annually 100,000 to 200,000 tons of coal largely from Clearfield County to electric power plants, industrial manufacturers, and a few retail outlets in Pennsylvania. Some of the points of destination are Philadelphia, Reading, Billmyer, Harrisburg, Hanover, Sunnybrook, Easton, York, and Lancaster. The company ships to any place from which it receives an order if the destination is covered by a railroad tariff; this is mostly in eastern Pennsylvania.

Requests for truck service have been received from some customers of the company who do not have rail sidings. His company was presently limited to rail transportation. During the months of July to November, 1955, there was a serious rail car shortage. In August, 1955, Bradford received 30 per cent of the rail cars requested, and in October 60 per cent. Bradford suffered a loss in business of approximately 40 per cent during the months of the shortage. Complaints were received by Bradford concerning the failure to ship the coal and to the service which was being rendered. Cars shipped on the Pennsylvania Railroad from Clearfield to Philadelphia were in transit from seven to eight days. After making complaint to the railroad the service was somewhat improved. The rail car shortage during the summer and fall of 1955 was due largely to the Great Lakes shipping season; and it was anticipated that this condition would continue thereafter. Bradford is essentially a rail shipper and it wishes to continue as such., It desires truck service to supplement rail service during the rail car shortages and for accounts which request truck service at Pottstown, Billmyer, Hanover, and other places. The grant of authority to applicant would be a convenience and accommodation to his company.

Jefferson Thomas, managing partner of Thomas Brothers Coal Company of Grampian, Clearfield County, testified. Coal is shipped by Thomas Brothers to the Philadelphia area at an annual rate of approximately 15,000 tons. The tonnage would increase in 1956. It has been shipping primarily by rail, and suffered a shortage of rail cars from July to September, 1955, as supplied by the Baltimore and Ohio and the New York Central railroads. His company received approximately 40 per cent of the rail cars requested during that period. As a result the company sus-

tained a loss of business. At the time of the hearing before the commission in May, 1956, the company was again feeling the effect of a rail car shortage. The railroads were then supplying approximately 50 per cent of the rail cars requested, which resulted in complaints from customers. There was no available motor truck service, and if applicant was authorized to render service it would be a convenience to his company. On cross-examination the witness testified that the rail situation had improved in 1956, but that there was still a shortage; that the coal from his company was sold in the Philadelphia area through brokers who furnished shipping instructions; and that the customers paid the freight charges.

The protestants admitted in their evidence that there was a serious rail car shortage in 1955, and that another rail car shortage was expected in 1956; but stated that thereafter the situation would be remedied by the railroads.

*Bradford Coal Company.* The commission, after receiving this evidence, granted authority to applicant to transport coal for the Bradford Coal Company from points in Clearfield County to points located beyond an air line distance of sixty miles from the limits of the Borough of Curwensville and east of a north-south line drawn through the borough. The railroads argue that the witness from the Bradford Coal Company mentioned only a few destination points in southeastern Pennsylvania, and that this testimony cannot support the grant of authority to haul for this company to all points in eastern Pennsylvania. We have frequently said it is not necessary that an applicant establish a present demand for his service in every square mile of the territory to be certified; proof of necessity within the area generally is sufficient. *Garner v. Pennsylvania Public Utility Commission*, 177 Pa.

Superior Ct. 439, 453, 110 A. 2d 907; *Zurcher v. Pennsylvania Public Utility Commission*, 173 Pa. Superior Ct. 343, 349, 98 A. 2d 218. If the evidence relates to specific points and not to an area generally, it supports a certification only to the specific points mentioned. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission*, 181 Pa. Superior Ct. 322, 337, 124 A. 2d 393. The witness from the Bradford Coal Company did not testify that his company shipped only to specific points. He testified that it shipped to points in eastern Pennsylvania, naming those to which shipments were more frequently made. He also said that it sold to "any place we get an order from, covered by the tariffs of the railroad," "mostly" east of Curwensville. It is important to note that what may constitute a need for service depends upon the locality involved and the particular circumstances of each case. *Noerr Motor Freight, Inc.,* supra, 181 Pa. Superior Ct. 322, 330, 124 A. 2d 393. Moreover, the sufficiency of the evidence to support a grant of authority is directly related to the nature and extent of the authority granted. *Modern Transfer Company v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 46, 56, 115 A. 2d 887. The authority given to applicant to transport coal to points in eastern Pennsylvania is not a general authority; it is limited in that it permits hauling only for one company. Although the designated territory is quite extensive, the shipments must originate with the Bradford Coal Company. It would appear that the railroads cannot be harmed if Bradford actually has no customers in eastern Pennsylvania in places other than those specifically mentioned by the witness. On the other hand, if Bradford Coal Company ships throughout eastern Pennsylvania to all places for which the railroad has a tariff, as the testimony of the witness indicates, the need for additional service to

all such points is established by the evidence relating to the general shortage of rail cars.

We think the need for additional motor truck service for this coal company has been established by the evidence of the rail car shortage, by the testimony relating to requests for motor truck service, and by proof of the delay in rail shipments. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 420, 85 A. 2d 546.

*Thomas Brothers Coal Company.* The commission granted applicant authority to transport coal for Thomas Brothers Coal Company to points within twenty-five miles of City Hall, Philadelphia. The testimony of the witness from this company indicated that it ships coal to the Philadelphia area for brokers, and that, because of the rail car shortage, there is a need for motor truck service in addition to that provided by the railroads. The railroads point out that on cross-examination the witness testified that the coal is shipped on instructions from brokers; that the witness did not know the customers to whom the coal was sold; and that the customers pay the freight charges. The railroads argue that the cross-examination of this witness minimizes the probative force of his testimony concerning the need of his company for additional service. We are not persuaded by this argument. The testimony of this witness on cross-examination did not have the effect of precluding his direct testimony of need from the commission's consideration. It is immaterial whether shipping instructions are given by the brokers, the customers, or Thomas Brothers Coal Company. This would have no effect upon the existence of the rail car shortages as they have been established in this record. As a matter of fact, without the certification of this applicant or some other motor

truck applicant, the person issuing shipping instructions for coal from this company would have no choice other than the service of the railroads which is insufficient. The witness clearly established the serious detrimental effect resulting from the rail car shortage in 1955 and the resulting complaints from customers. It was demonstrated further by this witness that the contemplated rail car shortage was developing again in 1956 about the time of the hearing. The existence of additional motor transportation gives the brokers or customers of this coal company an alternative means of shipment required for the preservation of the company's business.

The further argument is presented that the evidence does not support the grant of authority to transport coal for Thomas Brothers Coal Company to the area within twenty-five miles of City Hall, Philadelphia. It may be true that the witness did not specify, other than in general terms, the area near Philadelphia into which shipments of coal were made by his company. But we cannot say that when the commission, acting on this testimony, defined the area as within twenty-five miles of City Hall, Philadelphia, it acted unreasonably or beyond the scope of the evidence. See *Zurcher v. Pennsylvania Public Utility Commission,* supra, 173 Pa. Superior Ct. 343, 349, 98 A. 2d 218. The record clearly indicates that customers of this company within twenty-miles of City Hall, Philadelphia, would be affected by the rail car shortage. the same as any other customer of the company. The limited extent of the right granted to transport coal from this company protects the railroads in this respect. In any event, if the company has no customers within twenty-five miles of City Hall, Philadelphia, the railroads could not be harmed.

No matter how unimpressive the testimony of the witness from Thomas Brothers Coal Company may be, it was competent testimony and therefore its weight was for the commission. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* supra, 181 Pa. Superior Ct. 322, 330, 124 A. 2d 393; *H. J. Gongaware & Sons v. Pennsylvania Public Utility Commission,* 163 Pa. Superior Ct. 9, 10, 60 A. 2d 364. In this respect the commission did not abuse its discretionary power.[1]

The final contention of the railroads is that the evidence, at best, established merely a temporary need for additional service due to a temporary rail car shortage. Both shipper witnesses for the applicant testified to the serious rail car shortage during the "Lake Season," and they anticipated the shortage to recur in 1956. The witness from Thomas Brothers Coal Company, whose testimony was taken in May of 1956, indicated that the shortage for 1956 was then developing. In addition, the evidence presented by the railroads substantiated the recurring rail car shortage. Exhibit E of The Pennsylvania Railroad Company showed that Bradford Coal Company had ordered 2,006 rail cars in the period between July and November, 1955, and that it had been supplied with 1,107 or 55 per cent. The witness for The Pennsylvania Railroad Company admitted that the shortage in 1955 was serious, and that complaints were received; that a shortage was expected in 1956, but not in 1957; that the railroad had set up schedules to allocate a percentage of empty cars for mines in 1956; that the heaviest shipments of coal from the Clearfield County area apparently take place at the same time as the Great Lakes shipping season; and that the result is a car shortage from July to No-

---

[1] See Act of May 28, 1937, P. L. 1053, §1005, 66 PS §1395.

vember. The witness for The Baltimore and Ohio Railroad Company testified that it experienced a rail car shortage from May 6, 1955, to February 3, 1956, although he stated that there had been no shortage in the Clearfield area during the first several months of 1956. The witness for The New York Central Railroad Company also admitted a rail car shortage in 1955 during the "Lake Season," and testified that another shortage was expected in 1956. The railroad witnesses testified that their companies had programs to acquire more rail cars and to efficiently utilize present cars in an effort to combat this problem.

It was permissible for the commission to conclude on the basis of the evidence that there had been a serious rail car shortage; that it was developing again in 1956; and that it would continue despite the efforts of the railroads to remedy the situation. It was not necessary on this record that the commission limit the right of applicant to perform the requested service to a specific season or only during a rail car shortage. It appears from its order that the commission believed, in view of the prior unsatisfactory service rendered by the railroads, that it was necessary to introduce an element of competition to facilitate transportation of coal for these two companies. See *Sayre v. Pennsylvania Public Utility Commission*, 161 Pa. Superior Ct. 182, 184, 54 A. 2d 95. The limited certificated rights of applicant in this proceeding will make available to these coal companies and their customers an additional and alternative means of transportation and should tend to improve the service of the railroad carriers. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission*, supra, 181 Pa. Superior Ct. 322, 331, 124 A. 2d 393. The coal companies will continue as rail shippers. If the railroads meet car requirements the coal companies may not be obliged to resort to

supplemental truck service. However, the coal companies should not be subjected to loss of business because of the serious inadequacies of the railroads. See *Furst v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 330, 334, 134 A. 2d 435. The extent to which there should be competition between rail and motor truck service and its salutary effect is largely a matter committed to the sound discretion of the commission. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 421, 85 A. 2d 626; *Motor Freight Express v. Pennsylvania Public Utility Commission (No. 1),* 180 Pa. Superior Ct. 294, 301, 119 A. 2d 661.

The order is affirmed.