Coastal Tank Lines, Inc., Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued March 19, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Raymond A. Thistle, Jr.*, with him *Paul F. Barnes*, and *Shertz, Barnes & Shertz*, for protestant, appellant.

*William A. Goichman*, Assistant Counsel, with him *Thomas M. Kerrigan, Counsel*, for Pennsylvania Public Utility Commission, appellee.

*Henry M. Wick, Jr.*, with him *John A. Vuono*, and *Delisi and Wick*, for applicant, intervening appellee.

OPINION BY RHODES, P. J., June 10, 1959:

This is an appeal by Coastal Tank Lines, Inc., from an order of the Pennsylvania Public Utility Commission which granted to C. D. Ambrosia Trucking Company the limited right to transport, as a Class D carrier, fly ash, in bulk, for Rochez Brothers from two

power stations of the Duquesne Light Company located in the counties of Beaver and Allegheny to points within an airline distance of 150 miles of the point of origin, and the return of refused or rejected shipments. Coastal holds a certificate of public convenience which would permit it to render this service; it has never rendered such service.

Coastal contends that the order of the commission is not supported by substantial evidence in that the need for the proposed service and the inadequacy of existing service are not established.

On May 31, 1958, Ambrosia filed an application with the commission for the additional right to transport, as a common carrier, fly ash, in bulk, between points in the counties of Allegheny and Beaver and from points in those counties to points within 150 airline miles thereof and vice versa. Prior to the application Ambrosia had authority to haul certain products including building materials and cement in packages or in bulk.

Fly ash, which resembles cement, is a waste product resulting from the burning of pulverized coal, in this instance in the generation of electric power. Over the years certain beneficial uses have developed for fly ash in construction work which are commercially profitable. The commercial use of fly ash, however, is still in the process of initial development; in the Pittsburgh area its productive utilization began approximately two years prior to this proceeding. Coastal apparently holds the first certificate granted by the commission to a carrier to haul fly ash in Pennsylvania, having received that authority on September 4, 1956. At the time Coastal applied for its certificate, there was no need for motor vehicle transportation of fly ash from the Duquesne Light Company stations. Although its certificate may permit it to haul fly ash throughout Pennsylvania, Coastal renders this type of service only in

eastern Pennsylvania, where it hauls for one distributor in the Philadelphia area. It apparently has not attempted to keep abreast of the development of the commercialization of fly ash in western Pennsylvania.

Rochez Brothers, a building supply distributor, obtained a franchise from the Duquesne Light Company to commercialize fly ash developed in the Pittsburgh area.[1] At the time of this proceeding it had actual and potential customers within the 150-mile radius to be served by Ambrosia. Rochez owns one truck capable of hauling fly ash. The service of Ambrosia was requested because the one truck owned by Rochez was unable to fulfill all its needs, and it did not desire to invest further in additional equipment.

The commission found that there was a need for the service of Ambrosia to transport fly ash for Rochez from the two plants of the Duquesne Light Company; that Ambrosia had the necessary equipment preferred by Rochez; and that Ambrosia was ready and willing to provide the service required. The commission also found that Coastal was not in a position to provide the required service.

Our review of the record indicates that the evidence supports the findings of the commission and the grant of this limited authority which the commission stated was "a localized and specialized service in the transportation of fly ash."

Rochez, by requests presented to it, established a definite need for the service of Ambrosia. Although the fly ash business is relatively new, the evidence demonstrated that Rochez needed service to several points where actual deliveries had been made and to

---

[1] At the time of the hearing, approximately 5 per cent of the 750 tons per day of fly ash produced at the Duquesne Light Company plants was being sold.

other destination points where potential customers were located. Rochez is unable to deliver the commodity to its customers with its own facilities; it does not desire, nor is it required, to invest in equipment of its own. Although only several actual points were mentioned and several more as potential, we are of the opinion that the evidence supports the grant of authority to haul within a 150-mile area, in view of the limited nature and extent of the authority granted. Since Ambrosia was certified to haul for one shipper and from only two points, the fact that the territory into which such shipments could be made extended 150 miles from the points of origin loses the character of an unlimited authority to haul within an extensive and general territory. See *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 185 Pa. Superior Ct. 115, 122, 123, 138 A. 2d 279.

Moreover, the fly ash business is in its early development in western Pennsylvania. The Rochez request demonstrated a need to have carrier service not simply to several established points, but to other points in the general area in which it sought its potential customers as a necessary requisite to the proper and foreseeable development of this relatively new kind of business. The record as a whole demonstrates that the proposed service, limited as it is, was reasonably necessary within the territory designated. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 322, 333, 124 A. 2d 393.

The need for the service of Ambrosia was further established by evidence of some lack of interest in the transportation of fly ash in western Pennsylvania on the part of Coastal, by evidence of a shortage of facilities to render service for Rochez, and by evidence of the unsatisfactory type of equipment proposed to be utilized by Coastal in the hauling of fly ash for Rochez.

When Coastal obtained its authority in 1956 its application was supported by the West Penn Power Company in Washington County, Pennsylvania. At that time there was no need for any truck transportation of fly ash from the Duquesne Light Company. At the time of the present hearing Coastal was operating only in the Philadelphia area. The witness for Coastal testified that no attempt was made to remain familiar with the fly ash development in western Pennsylvania, and that the only piece of equipment for hauling fly ash which had been located in western Pennsylvania was there for only a short time when it was returned to the Philadelphia area. If, as Coastal argues, it was a pioneer in the hauling of fly ash, it demonstrated a certain lack of interest in the business in western Pennsylvania until the applicant, Ambrosia, appeared on the scene. We have often said that the disinterest of carriers need not indefinitely inconvenience the shipping public. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission*, supra, 181 Pa. Superior Ct. 322, 331, 124 A. 2d 393. The witness for Coastal stated that to his knowledge his company had never contacted Rochez concerning the transportation of fly ash in bulk, although it also appears that Rochez did not investigate whether Coastal was authorized to render the needed service. This lack of contact may have been due to a mutual lack of knowledge; it thus may excuse in part the failure of Coastal to solicit this specific customer. However, the apparent general disinterest of Coastal in the development of fly ash commercialization in western Pennsylvania was a matter to be considered by the commission.

Rochez stated a desire to have the availability of equipment of the type utilized by Ambrosia in preference to the equipment of Coastal which was considered unsatisfactory for its purposes. The vehicles of Coastal

which were used in the Philadelphia area and which it proposed to use in western Pennsylvania were of the hopper type. Rochez had experienced unsatisfactory service in the use of hopper-type railroad cars for hauling fly ash in bulk, and preferred the use of standard single screw cement trucks. The witness for Rochez felt that the Coastal equipment would not be satisfactory. The applicant, Ambrosia, introduced testimony that hopper-type vehicles were unsatisfactory because of spillage, and that the hauling of fly ash, the same as the hauling of cement, should properly be done in a tank-type vehicle. Ambrosia proposed to use the screw-type vehicle acceptable to Rochez which Ambrosia had available and was then using to haul cement under another certificate. While it may be true that the witness for Coastal stated that the hopper-type vehicles were satisfactory in the service they rendered in eastern Pennsylvania, we believe that this conflict in testimony was properly a matter for the commission to determine. *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission*, supra, 181 Pa. Superior Ct. 322, 329, 124 A. 2d 393. The stated preference of the shipper while not controlling was certainly entitled to some consideration.

Coastal was also found by the commission to have been lacking in sufficient equipment to perform the service needed by Rochez. As we have previously indicated, the only vehicle which Coastal had maintained in western Pennsylvania for this type of shipping had been withdrawn to the Philadelphia area. In addition the witness for Coastal stated that it would have available immediately only one vehicle which would be of the hopper type. The witness stated that there was a possibility of another vehicle when they received their fourth unit. Ambrosia, however, proposed to begin service with several pieces of equipment of the standard

cement screw type. It has the capital to purchase additional equipment should the need arise. The ability of Ambrosia to render this service is not in question.

We conclude, therefore, that the commission acted within the area of its administrative discretion in granting this limited specialized service. The evidence, considered in the light of the nature and extent of the authority which was granted, supports the action of the commission. Moreover, since this is a new and developing business, it was not improper for the commission, on this record, to inject an element of competition into this field of transportation. See *Noerr Motor Freight, Inc. v. Pennsylvania Public Utility Commission,* supra, 181 Pa. Superior Ct. 322, 331, 124 A. 2d 393.

The order is affirmed, at the cost of appellant.