## Carl R. Bieber, Inc. v. Public Utility Commission. Capitol Bus Company v. Public Utility Commission.

Argued June 1, 1971, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*John W. Dry*, with him *DeLong, Dry & Cianci* and *Christian V. Graf*, for appellant, Carl R. Bieber, Inc.

*Christian V. Graf*, for appellant, Capitol Bus Company.

*Alfred N. Lowenstein*, Assistant Counsel, with him *Edward Munce*, Acting Counsel, for appellee, Public Utility Commission.

*W. Russell Hoerner,* with him *John B. Wilson, III,* and *Shearer, Mette & Hoerner, Clinton J. Najarian, Sidney D. Kline, Jr.* and *Stevens & Lee,* for intervening appellee, Reading Bus Company, Inc.

OPINION BY JUDGE CRUMLISH, JR., September 9, 1971:

This is before us on appeal of an order of the Public Utility Commission which issued an amended certificate of public convenience to Reading Bus Company, Inc., intervenor.

Carl R. Bieber, Inc. and Capitol Bus Company, Inc., protestants to Reading's application, have appealed the extension of Reading's service rights on the grounds that the Commission failed to base its order upon substantial evidence of need for the proposed service and/or of inadequacy of existing services. We find the appeals to be without merit and affirm the order.

Reading operates regular route mass transit bus service in the City of Reading and other areas in Berks County under a common carrier certificate issued by the Commission. In addition, by a certificate dated March 14, 1968, Reading is also authorized to provide "group and party service"[1] from and to points in the City of Reading from and to certain named boroughs and townships in Berks and Lancaster Counties and from points located within one mile of its mass transit routes. By its present application, Reading seeks to extend its present group and party service to include

---

[1] Under the Commission's Bus and Taxicab Regulations, Rule 2(C), a bus company providing "group or party service" has the authority, subject to certain conditions not here in issue, "to transport groups and parties of persons and render excursion and sightseeing services in the area authorized . . . ." Because excursion and sightseeing services are ancillary to the requested use, we will dismiss appellant's contention that Reading had to present evidence of necessity with respect to these services.

service to various points in Pennsylvania. This would not enlarge the origin points of Reading's service.

Following hearings, the Commission granted the extension. Bieber and Capitol took separate appeals which were both filed July 27, 1970 in the Superior Court. A petition by the Commission for issuance of a long-form order substantiating the Commission's conclusions was allowed and the long-form order was issued September 14, 1970. On December 14, 1970 this matter was transmitted to this Court under Section 507(b) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L.    , No. 223, Art. V, §507(b), 17 P.S. §211.507(b).

" 'The authority of this Court to overrule an order of the Commission is limited. We may not disturb such an order except for errors of law, lack of evidence to support a finding, determination or order of the Commission, or violation of constitutional rights, Section 1107 of the Public Utility Law, [Act of May 28, 1937, P. L. 1053, as amended,] 66 P.S. §1437, Pa. Railroad Company v. Pa. P. U. C., 202 Pa. Superior Ct. 114, 195 A. 2d 162 (1963); and we may not exercise our independent judgment on the record or resolve conflicting evidence.' Peoples Cab Co. v. Pa. P. U. C., 216 Pa. Super. 18, 21, 260 A. 2d 490 (1969)." *McNaughton Bros., Inc. v. Pa. P. U. C.*, 2 Pa. Commonwealth Ct. 319, 278 A. 2d 186 (1971). Appellants allege that there is a lack of evidence to support the extension of Reading's certificate.

Reading presented numerous public witnesses in support of its proposal. According to the long-term order these witnesses' "testimony reflected the desirability of having additional group and party bus service available in the proposed area." The Commission found that while these witnesses made a "few complaints . . . about existing service", they "anticipated further need

for the proposed service." Reading also presented the testimony of its president as to requests for the proposed service, the present Reading mass transit system and the financial effects upon the mass transit system which would be expected to result from the grant of the application.

The protestants, through their own witnesses and cross-examination of the public witnesses, presented testimony as to the adequacy of the existing service, and as to the anticipated economic effect upon their businesses if Reading succeeded. The Commission concluded that testimony of "economic hardship" was "purely speculative and . . . only collateral . . . [to] . . . whether the proposed supplemental service would be in the best interests of the public." The Commission concluded that the testimony of Reading's witnesses relating to necessity, public accommodation and competition was "sufficient basis . . . [upon which] . . . to authorize the service applied for in the application." We find this conclusion to be neither an error of law nor an abuse of discretion.

The Commission in considering an application for enlargement of operating privileges, such as here, has the duty to determine whether "the granting of such certificate is necessary *or* proper for the service, accommodation, convenience, *or* safety of the public." Act of May 28, 1937, P. L. 1053, Art. II, §203, 66 P.S. §1123. (emphasis added)

The applicant is not required to demonstrate actual proof of necessity or propriety as long as the proposed service is reasonably necessary for the accommodation or convenience of the public. *McNaughton, supra; Zurcher v. Pa. P. U. C.,* 173 Pa. Super. 343, 98 A. 2d 218 (1953). In *McNaughton,* we upheld the Commission "although the evidence presented by [the applicant] was 'fragmentary' and the record of performance

by the protestants 'satisfactory' ". In the instant case, the record reveals ample request testimony. It also reveals significant factors such as the desirability of Reading's local base of operations.[2] Such testimony may be sufficient to sustain an application for extended services and therefore conclusions as to the weight given this testimony is a matter solely for the Commission. *Reeder v. Pa. P. U. C.,* 192 Pa. Super. 298, 162 A. 2d 231 (1960); *Lyons Transportation Co. v. Pa. P. U. C.,* 163 Pa. Super. 335, 339, 61 A. 2d 362 (1948); *Gongaware and Sons v. Pa. P. U. C.,* 163 Pa. Super. 9, 60 A. 2d 364 (1948); *Modern Transfer Co. v. Pa. P. U. C.,* 139 Pa. Super. 197, 12 A. 2d 458 (1939). The Commission did not err in concluding that this evidence constituted a sufficient and substantial basis for its order.

However, the Commission has further buttressed its opinion in considering the effect this grant will have on Reading's mass transit system. The Commission held as follows: "Unless supplemental group and party authority is inimical to the financial security of other certificated carriers, the rights sought may be found in the public interest when necessary to assure reasonable continuation of an applicant's fixed-route service. In the instant case, at least seventy (70%) percent of the applicant's operation is concerned with local mass transit which it has obviously been operating at a deficit. On the other hand, protestants' group and party bus services have been quite profitable and no substantial evidence was presented that competitive group and party bus service, to the extent here authorized, would cause the service of either protestant to become un-

---

[2] The record reveals that neither Capitol nor Bieber operate directly out of the Reading area. This often results in either a dead head charge or a higher minimum charge for the Reading patrons of those carriers.

profitable." "[I]t was proper for the commission to consider the preservation of dependable local transportation service by the grant of additional authority, shown by public need, which will permit *financially stable operation* by the carrier. Modern Transfer Company, Inc. v. Pennsylvania Public Utility Commission, 139 Pa. Superior Ct. 197, 203, 12 A. 2d 458." (Emphasis added.) *Reeder, supra*, at 304.

We find the order of the Commission to be amply based upon substantial evidence. It is clear that the grant of the extended certificate is *"proper for the service, accommodation, convenience,* [and] *safety of the public."* 66 P.S. §1123 (emphasis added). Being satisfied that a basis for that conclusion exists in the record, we issue the following

### ORDER

And Now, this 9th day of September, 1971, the order of the Pennsylvania Public Utility Commission is hereby affirmed.